**Pamela Nagorka MATTHEWS, Plaintiff,**

v.

**CITY OF GULFPORT and G. Curt Willocks, in his individual Capacity, Defendants.**

**No. 98–727–CIV–T–17A.**

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 19, 1999.

Marcia S. Cohen, Cohen & Kyres, St. Petersburg, FL, Craig L. Berman, Berman Law Firm, P.A., St. Petersburg, FL, for Pamela Nagorka Matthews, plaintiff.

Charles J. Thomas, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, Timothy Patrick Driscoll, Driscoll & Prats, P.A., St. Petersburg, FL, for City of Gulfport and G. Curt Willocks, defendants.

## ORDER

KOVACHEVICH, Chief Judge.

**THIS CAUSE** is before the Court on Defendants City of Gulfport's (hereinafter "City") and G. Curt Willocks' (hereinafter "Willocks") Motions for Summary Judgment as to Plaintiff's Complaint (Dkts.39, 41) and as to Count I of Defendant Gulfport's Counterclaim (Dkt.43).

### STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Consequently, the moving party bears the burden of initially proving that no issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is identified through application of substantive law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has met its burden of showing the non-existence of a material fact, the non-moving party must go beyond the pleadings to show that a genuine issue indeed exists for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

A genuine issue exists where the record, taken as a whole, contains evidence "such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. It is the Court's responsibility to examine the evidence in the record to determine whether there is a genuine issue for trial. *See id.* at 249, 106 S.Ct. 2505. If, upon examination, the evidence is not probative and the non-moving party fails to show that a genuine issue exists, then summary judgment should be granted. *See Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *see also Celotex,* 477 U.S. at 324,, 106 S.Ct. 2548.

## FACTS

Plaintiff Pamela Nagorka Matthews (hereinafter "Matthews") brings claims under Title VII, the Florida Civil Rights Act of 1992, the Civil Rights Act of 1871, and Florida common law. Matthews alleges sex discrimination, hostile work environment, retaliation, constructive discharge, deprivation of rights under the First and Fourteenth Amendments of the United States Constitution, deprivation of the right of freedom of speech under Article I, Section 4 of the Florida Constitution, and negligent retention and supervision.

On June 16, 1994, Plaintiff Matthews commenced employment with Defendant City as a probationary police officer. When hired, Matthews executed a contract with Defendant City, which obligated her to repay training costs incurred by Defendant City if she were to resign from employment within three (3) years following completion of her field training. Matthews worked with Defendant City until November 11, 1996. During her employment with Defendant City, Matthews contends that she was treated disparately because of her gender, was retaliated against after complaining about such conditions, and was constructively discharged from her position. In April, 1997, Matthews filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") and FCHR, and later received a Right to Sue letter from the EEOC, dated February 19, 1998. Plaintiff filed suit against the Defendants City and Willocks, alleging that she was the victim of sexual discrimination, hostile work environment, retaliation, constructive discharge, deprivation of rights under the First and Fourteenth Amendment of the United States Constitution, and deprivation of the right of freedom of speech under Article I, Section 4 of the Florida Constitution, and negligent retention and supervision. Such allegations are in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Florida Civil Rights Act of 1992, as amended, § 760.10 *et seq.* ("FCRA"), the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983 ("Section 1983") and Florida common law.

Plaintiff Matthews alleges many instances of discrimination and harassment (Plaintiff Dep. and Plaintiff Complaint, pp. 3–6). Among the allegations are those that follow:

1. Matthews was subject to disparate treatment when hired. She signed a contract which required her to repay training expenses if she left the City within three (3) years, whereas, two male officers, hired a month earlier, signed contracts that required repayment within (2) years, and a male officer hired after her was not required to sign an agreement at all.

2. Matthews was subject to disparate treatment during her field training. She was called a "dumb rookie" by her field training officer, A.J. Falconeri, who also said that she was not an adequate police officer and that she was not as manly as another female police officer.

3. Matthews' voice was often imitated and ridiculed over the police radio by A.J. Falconeri and Mike Bieluwka.

4. Mike Bieluwka told Matthews that she had great legs when she wore shorts and made "woo-woo" comments to her, also commenting once about her mesh T-shirt.

5. Sergeant Bill Wasoba looked at Matthews' chest when speaking to her and inquired as to how a female could wear a bulletproof vest.

6. During daily read-off, Bill Wasoba made gestures relating to women's breasts and spoke of women as sexual objects, once commenting about a woman having "huge breasts."

7. Bill Wasoba whistled at Matthews on several occasions and included in her 1994 performance evaluation that she "looks good in her uniform."

8. Sergeant Ray Gleaton once described a drowning victim as if she looked like she had been "ridden hard,"

where Paramedic Terry Moulton added the phrase, "like Pam."

9. On September 8, 1996, Terry Taylor told Matthews that he wasn't wearing underwear and asked her for baby powder, then grabbed at the crotch of his pants and pulled it outward.

10. Officer Matt Wilkins told a sexually oriented joke concerning a crack whore and a whore, after which he smiled at Matthews and stated that he didn't want her to sue him.

11. Billy Maniatakos called African-Americans "mullions" which he stated was Greek for "nigger" and made a comment "fucking niggers—let's shoot them all."

In September of 1995, Matthews spoke with Chief G. Curt Willocks about her experiences up to that time. She complained of sexual harassment to him, and provided him with a collection of notes that she had taken regarding incidents of sexual harassment. Willocks suggested that Matthews' complaint was serious, and that he wanted to investigate the situation. Willocks told Matthews that the allegations could result in serious disciplinary action and that fellow police officers could retaliate against her. On October 5, 1995, Matthews gave a sworn statement to Willocks to commence his sexual harassment investigation, detailing the incidents above, which had occurred at that time.

Following the investigation, Willocks met with the harassers, but no discipline of any kind was given to any of the officers. Willocks also met with his lieutenants but did not ask them whether they were aware of any harassing behavior, where such awareness would require a lieutenant to report any such behavior according to the sexual harassment policy implemented by the City.

After meeting with Willocks, Plaintiff was treated differently and the harassment continued. After the complaint, Mike Bieluwka failed to back-up Matthews on several occasions, and made at least one more "woo-woo" comment to her. In addition, Matthews claims that several officers

refused to back her up after she reported the harassment to Willocks. Other incidents of continued harassment included:

1. Billy Maniatakos also made demeaning comments about gays and lesbians and described those raising money for breast cancer as "dykes," and asked Matthews why she was working on such a project.

2. Billy Maniatakos warned new police recruits to avoid Matthews because she carried a notebook and would put a sexual harassment suit against them.

3. Bill Wasoba told Matthews that he loved women and that he was a lesbian, while rolling his hips suggestively and licking his lips. Bill Wasoba continued to make comments about women's breasts during read-off.

4. Bill Wasoba also told a racially offensive joke and walked behind Matthews and thrust his pelvis. Bill Wasoba commented to Matthews about the fact that a victim was found without her underwear on and that she had been engaged in sexual intercourse from 4:00 A.M. to 6:00 A.M. and that he was impressed at the length of time.

5. Sergeant Terry Laubaugh retaliated against Matthews by threatening disciplinary action for an incident involving personnel folders.

Matthews did not report any of these incidents to Willocks, even after Matthews was told to report any future situations to Willocks.

In November, 1996, Matthews resigned from Defendant City, because she could not bear any further harassment. Matthews submitted a letter of resignation that was effective on November 25, 1996.

### DISCUSSION

I. APPLICABLE STATUTE OF LIMITATIONS

Defendant City's principal argument in support of summary judgment is that many of the events and conduct complained of with regard to Plaintiff Mat-

thew's claims under Title VII and the FCRA are barred by the 300–day and 365–day window of time for filing a charge, respectively.

Title VII requires that a claimant file a discrimination charge with the EEOC within 180 days of the alleged misconduct, or, if the claimant has already filed the charge with a state or local agency, within 300 days of the alleged discriminatory misconduct. *See* 42 U.S.C. § 2000e–5(e)(1). FCRA requires that a plaintiff file a charge within 365 days of the alleged misconduct. Therefore, absent an exception, only the alleged actions, which took place on or after June 16, 1996, will be included under Title VII and those actions, which took place on or after April 10, 1996 are actionable under FCRA.

Matthews filed her federal lawsuit on April 6, 1998. The alleged acts of discrimination began in the summer or fall of 1994. Matthews asserts that the acts complained of are not time-barred as they constitute a continuing violation of her civil rights, where some incidents occurred within the statute of limitations, and, under the continuing violation doctrine, all of her allegations are timely.

 The continuing violation exception allows for an extension of the limitations period based on the claim of acts, which are committed under an ongoing policy of discrimination. *See Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992). To invoke the exception, there must be at least one incident of harassment occurring within the 300–day period. *See Waltman v. International Paper Co.,* 875 F.2d 468 (5th Cir. 1989). The exception has been regularly applied in cases involving hostile work environment claims, where sexual harassment continues in acts over time. *See Id.* at 476. However, such application is the exception and not the rule, therefore the Court must analyze three factors in order to determine whether the continuing violation exception is available to the plaintiff. *See Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793 (11th Cir.1988). In analyzing

whether the exception applies, a court should refer to a variety of factors, rather than relying upon superficial factual analysis. *See id.* at 799. A court should look to whether such allegations are related in: (1) subject matter; (2) frequency; and (3) permanence. *Id.* at 800.

 In examining the first factor, subject matter, the Court should determine whether the alleged acts involve the same type of discrimination, which would connect them in a continuing violation. *See Cardin v. Via Tropical Fruits, Inc.,* 1993 WL 945324 at *18 (S.D.Fla. July 9, 1993). Matthews' claim involves both claims of sexual harassment and racial discrimination. Matthews claims to have been subjected to an array of harassment which include, but is not limited to: racial jokes, sexual jokes, and sexist remarks. Each act of harassment does not involve the same type of discrimination. Consequently, Matthews' argument fails under the first prong of the continuing violation exception. However, the Court will address the second and third factors.

Second, the Court must determine the frequency of the incidents and whether the acts are recurring or more likely isolated incidents. *See id.* at 18. Matthews complains of having been harassed the entire time she was employed, from June 1994 until November 1996 (Plaintiff's Memo in response to City's Motion for Summary Judgment p. 4). The Court does not assert that gaps in time between incidents specifically constitute that the incidents are isolated. *See Waltman v. International Paper Co.,* 875 F.2d 468, 476 (5th Cir. 1989). For the sake of argument, the Court will assume the incidents alleged by Plaintiff involve harassment that occurred frequently, and thereby satisfy the second factor of the continuing violation doctrine.

Third, and finally, is whether the degree of permanence was enough to alert an employee that she should assert her rights. Matthews was allegedly subject to harassment from the time she first began working for the City (Plaintiff's Complaint,

p. 3). Matthews concedes that she complained about such harassment only in a September 1995 meeting with her supervisors and a sworn statement in October of 1995. During the meeting with her supervisors, Matthews presented a collection of notes that she had taken regarding incidents she deemed as sex harassment. At that point Matthews rightfully relied upon the protections of her employer to cure the situation. When the situation did not change, Matthews asserted something more should have been done. After her October statement, Matthews was well aware of the importance of the situation and the need for action. In fact, Matthews states that the City was obligated to take action on her complaint (Plaintiff's response to Defendant's Motion for Summary Judgment, p. 11). When the City did not take what Matthews saw as sufficient action, Plaintiff continued to take note of every incident, which occurred up to the time of her resignation in November 1996, now by keeping a notebook. In that notebook, Matthews documented many episodes that occurred with which she felt involved harassment, therefore every episode which allegedly violated Plaintiff's rights.

██ The fact that Matthews kept a notebook coupled with the notion that she complained to her supervisors more than once, supports a finding that these incidents occurred with such permanence that Matthews should have been prompted to assert her rights. *See Johnson v. Woodruff*, 28 F.Supp.2d 1248, 1251 (where plaintiff alleged racial discrimination based on four-time denial of promotion and conceded to fact that he complained each time he was denied the promotion and alleged that his employer should have done more to investigate his complaints.) Therefore, Matthews' argument fails to meet the third factor of the continuing violation doctrine.

Because Plaintiff has not alleged facts sufficient to establish a continuing violation, those events that occurred prior to June 16, 1996 are time-barred under Title VII and those action which occurred prior to April 10, 1996, are also time-barred under FCRA. Based on this reasoning, the only allegations which Matthews has timely asserted are: (1) that Mike Bieluwka made a "woo-woo" comment to her about her legs; (2) Bill Wasoba continually made comments about women's breasts and other inappropriate comments at read-off; (3) Bill Wasoba commented to Matthews about being a lesbian and then licked his lips suggestively; and (4) Bill Wasoba made a racially insensitive remark, behind Matthews, while thrusting his pelvis in an suggestive manner.

Under Title VII, Matthews is statutorily barred from pursuing all claims arising prior to June 16, 1996 (300 days). Under FCRA, Matthews is statutorily barred from pursuing all claims arising prior to April 10, 1996 (365 days).

## II. HOSTILE WORK ENVIRONMENT

Defendant City seeks summary judgment on Counts I and II, which state that the City violated Title VII and the FCRA by creating a hostile work environment. Defendant City points out that the Supreme Court has clearly established that in order to maintain an action for hostile work environment, the alleged conduct must be extreme. The Supreme Court has determined that a hostile work environment is one that is "permeated with discriminatory intimidation, ridicule, and insult." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998). The City argues that Matthews' situation does not support such a finding, based on the assumption that the continuing violation doctrine would not apply, since only a few instances cited by Plaintiff occurred during the limitations period, and those instances were not severe enough to create a hostile working environment. Because the continuing violation doctrine does not apply, a majority of Matthews' allegations are, in fact, time-barred and therefore will not be considered under the theory of hostile work environment.

The plaintiff bears the burden of establishing a prima facie case of hostile work environment under Title VII and FCRA. Matthews must show that 1) she belongs to a protected class; 2) she was subjected to unwelcome sexual harassment; 3) the harassment was based upon sex; 4) the harassment was sufficiently severe or pervasive to create an abusive work environment; 5) the sexual harassment was imputable to the employer. *See Degitz v. Southern Management Services, Inc.,* 996 F.Supp. 1451 (M.D.Fla.1998), citing *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1557 (11th Cir.1987).

■ Defendant City argues that Matthews cannot satisfy the elements of a hostile work environment claim. After consideration, the Court concludes that Defendant City is correct. Only a few acts that Matthews originally complained of survive the statute of limitations under either Title VII or FCRA. The few instances cited by Matthews in support of a hostile work environment claim are not severe or pervasive. As noted in *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998), "simple teasing offhand comments, and isolated incidents will not amount to discriminatory changes in the terms and conditions of employment." The incidents that Matthews complains about include: (1) that Mike Bieluwka made a "woo-woo" comment to her about her legs; (2) Bill Wasoba continually made comments about women's breasts and other inappropriate comments at read-off; (3) Bill Wasoba commented to Matthews about being a lesbian and then licked his lips suggestively; and (4) Bill Wasoba made a racially insensitive remark, behind Matthews, while thrusting his pelvis in an suggestive manner. These incidents do not amount to the level of severity, described in *Faragher. See id.* They are not enough to create a hostile work environment.

The Court concludes that Plaintiff Matthews has not met her burden of establishing a prima facie case of hostile work environment. Based on the foregoing, this Court will grant the motion for summary judgment in favor of Defendant City as to Counts I and II.

## III. RETALIATION

Defendant City seeks summary judgment as to Counts III and IV, which allege that Defendant City violated Title VII and the FCRA by retaliating against Plaintiff Matthews by altering the terms, condition and privileges of Plaintiff's employment, engaged in pervasive retaliatory harassment, failed to adequately discipline the male officers who sexually harassed Plaintiff, and sought repayment of costs pertaining to Plaintiff's training.

In order to establish a prima facie case of retaliation, Plaintiff must establish that (1) a statutorily protected expression existed; (2) adverse employment action was taken; and (3) a causal connection existed between the protected expression and the adverse action. *See Little v. United Technologies,* 103 F.3d 956, 959 (11th Cir.1997).

■ Plaintiff Matthews asserts that in retaliation for complaining to her superiors about the alleged sexual harassment that was taking place, she was subjected to certain actions by the Defendant City, which consisted of: (1) continued sexual harassment; (2) being denied back-up on several occasions; (3) ignoring racial remarks made by fellow officers; (4) putting Plaintiff on leave; and (5) requiring Plaintiff repay training expenses. Matthews correctly assumes that these actions constitute "adverse employment actions." Under *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453 (11th Cir.1998), Title VII protection extends to conduct that falls short of an ultimate employment decision, which in *Wideman* included solicitation of negative comments by co-workers and a one-day suspension from work.

■ While the complaints constitute adverse employment action, Defendant City argues that Matthews is unable to make the prima facie showing of retaliation based on the lack of "casual connection"

between the Plaintiff's complaints and the Defendant's actions. To prove retaliation and show that a casual connection exists, Matthews must only prove that her protected activity and the adverse actions against her were not completely unrelated. *See Wideman*, 141 F.3d at 1457.

Defendant City argues that Matthews does not have the ability to show that she suffered retaliation as a result of her sexual harassment compliant. Specifically, the City argues: (1) that Plaintiff's continued exposure to alleged sexual harassment was due to her inaction to report any further situations to her superiors; (2) that her back-up claim is unsupported by any evidence and that Matthews admitted she had no factual support for her contention; (3) that officers making racial remarks were not reprimanded because Matthews did not report such accusations until after her employment ceased; (4) that she was placed on a two-day administrative leave for her own protection; and (5) that the City is currently seeking training expenses based solely under its contractual right. (Def. City's Motion for Summary Judgment pp. 12–14). Where the burden rests on the defendant to show some non-discriminatory purpose for its actions, once that burden is satisfied, it shifts back to the plaintiff to show credible evidence of a genuine issue of material fact as to whether the City's explanation is pretextual. *See McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Defendant City has met the burden of showing a non-discriminatory reason behind its actions, therefore, the burden returns to the Plaintiff to show the reason is pretextual.

As to most of the allegations, Plaintiff Matthews does not offer evidence to show that the City's explanation is pretextual. However, one piece of evidence does suggest that one allegation has a pretextual explanation. The deposition of Officer Vincent provides evidence that Plaintiff was treated differently by her fellow officers, in regard to back-up, after complaining of sexual harassment. (Vincent Dep. 45) Vincent states that other officers spoke about how they refused to back up Matthews. (Vincent Dep. 45–46) Matthews has offered evidence that part of the City's explanation for its actions is pretextual. The retaliation claim will turn on the credibility of testimony. Credibility determinations are a jury function. *See Armstead v. City of St. Petersburg*, 1997 WL 724420 (M.D.Fla.). After consideration, the Court denies the motion for summary judgment as to counts III and IV.

## IV. DISPARATE TREATMENT

Defendant City requests this Court to grant Summary Judgment based on Counts V and VI, which assert that Matthews was subjected to disparate treatment on the basis of her gender, in violation of Title VII and FCRA. To prove a prima facie case of gender discrimination, the Plaintiff must show: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situation male employees more favorably; and (4) that she was qualified to do the job. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

Plaintiff Matthews alleges that she was subject to disparate treatment based on her gender regarding: (1) the terms and conditions of her employment; (2) the terms of her obligation to repay the City for training expenses; (3) the manner in which she was trained; and (4) the City's failure to provide back-up.

As previously discussed, all allegations that occurred prior to the 300–day and 365–day statutory period under Title VII and FCRA, respectively, are time-barred. The Court concludes Plaintiff's effort to seek recovery based on such allegations is futile. All disparate treatment allegations,

with the exception of the issue involving back-up, are time-barred. Plaintiff signed her contract in June, 1994 and completed her training in 1994. Consequently, the claims related to those time-barred events are unavailable to the Plaintiff.

█ As to the allegation that Plaintiff was subjected to disparate treatment based on gender, when she was not provided back-up on nine (9) occasions, Matthews claims that this occurred because she was female. However, Matthews does not provide any evidence to support her contention, other than her own opinion that it was on the basis of her gender. Matthews satisfies only the first prong of the test established in *McDonald. See id.* As a woman, Matthews is a member of a protected class. *See Henson v. City of Dundee,* 682 F.2d 897, 903 (11th Cir.1982). However, Matthews does not present any evidence that failing to provide back-up is an adverse employment action. Further, Matthews does not provide specific instances where male officers were treated differently and provided with back-up. Finally, Matthews does not show that this action was casually related to her protected status. The only evidence Matthews does offer concerning back-up is a statement by Officer Vincent, who states that back-up was not provided to Matthews because she complained of sexual harassment, not because she is female. Consequently, Matthews has not established a prima facie case of disparate treatment. Therefore, the Court grants the motion for summary judgment as to Counts V and VI.

## V. CONSTRUCTIVE DISCHARGE

█ Defendant City seeks Summary Judgment on Counts VII and VIII, which assert claims for constructive discharge based on unwelcome sexual harassment, disparate treatment, and unlawful retaliation, all of which Plaintiff experienced while employed by Defendant City. "[W]hen an employee involuntarily resigns in order to escape intolerable and illegal employment requirements to which he or she is subjected to because of race, color, religion, sex, or national origin, the employer has committed a constructive discharge in violation of Title VII." *Morgan v. Ford,* 6 F.3d 750 (11th Cir.1993) (quoting *Henson,* 682 F.2d at 907). Thus, in order to demonstrate constructive discharge, Matthews must show that her working conditions were so intolerable that a reasonable person in the same position would be compelled to resign. *See Kilgore v. Thompson & Brock Mgmt.,* 93 F.3d 752, 754 (11th Cir.1996).

█ Although Title VII sexual harassment and constructive discharge are separate issues, to be decided separately, where a plaintiff is unable to support a hostile work environment claim, she is also unable to support a claim of constructive discharge. *See* Ernest C. Hadley & George M. Chuzi, *Sexual Harassment:* Federal Law Ch. 3. I.A. 8 (1997 ed.) (citing *Ebert v. Lamar Truck Plaza,* 715 F.Supp. 1496, 1500 (D.Colo.1987)). In support of her constructive discharge claim, Matthews has only presented a few allegations that are not time-barred. Those allegations include the issue involving back-up. While Matthews felt she was not receiving back-up and her life was in jeopardy, the City points out that Matthews has claimed only nine instances in a one-year period where this happened. Although Matthews felt that this put her life in jeopardy, these allegations are not severe or pervasive enough to meet the threshold required for a showing of constructive discharge. Furthermore, Matthews does not allege any facts that create a situation that could be deemed severe or pervasive. Matthews must prove that her working conditions reached a level of severity that exceeds the minimum required to prove a hostile working environment claim. *See Landgraf v. USI Film Products,* 968 F.2d 427, 430 (5th Cir.1992). Matthews does not meet this burden.

█ Further, an employee has the responsibility to act reasonably before choosing to resign, and then labeling that resignation as a constructive discharge. *Garner v. Wal–Mart Stores, Inc.,* 807 F.2d

1536, 1539 (11th Cir.1987). Part of acting reasonably is notifying the employer of improper behavior, and affording the employer an opportunity to correct it. *See id.* The City argues that where Matthews admits that she failed to follow directions by her supervisor and report any further instances of sexual harassment, she did not act reasonably. In response, Matthews asserts that where further complaints to supervisors would have been futile, she did not act unreasonably. *See Chancey v. Southwest Florida Water Mgmt. District,* 965 F.Supp. 36 (M.D.Fla. 1997).

■ The Court concludes that Matthews did not act reasonably when she did not report any further harassment to her supervisors. Instead, Matthews kept a notebook of all incidents, but never reported any further situations to her employer. Consequently, Matthews has not shown that her resignation constituted a constructive discharge. Therefore, the Court grants the motion for summary judgment in favor of the Defendant City on Counts VII and VII.

## VI. CONSTITUTIONAL RIGHTS

### A. City of Gulfport

Defendant City requests this Court to grant summary judgment in its favor, based on Counts IX and X, which allege retaliation under the First and Fourteenth Amendments to the U.S. Constitution and Section 1983 and also under the Florida Constitution. This allegation of retaliation stems from Matthews reporting the use of racial epithets concerning African–Americans.

In order to establish a prima facie case of retaliation, the Plaintiff must establish that (1) a statutorily protected expression existed; (2) adverse employment action was taken; and (3) a causal connection existed between the protected expression and the adverse action. *See Little v. United Technologies,* 103 F.3d 956, 959 (11th Cir.1997).

Plaintiff Matthews alleges that during her employment she reported to her employer that several male officers had made racially discriminatory remarks about African–Americans. Plaintiff further alleges that reporting this to her employer was a matter of public concern. Plaintiff asserts that as a result of reporting these racial slurs, she was subject to retaliation in the form of policymaking officials (1) altering the terms of her employment; (2) seeking repayment of her training costs; and (3) constructively discharging her from her job.

For this motion only, Defendant City does not contest the existence of the first two prongs, only that Matthews cannot prove a prima facie case based on the lack of a causal connection. The City further asserts that retaliation is impossible because such racial slurs were only brought to its attention and reported by Matthews after she had resigned from her employment with the City. Ultimately, the issue of whether the Plaintiff reported the racial slurs prior to termination of her employment creates a situation where material facts are at issue.

■ Matthews alleges that she brought these racial slurs to the attention of her supervisors prior to termination of her employment (Plaintiff's Complaint, Exh. A, p. 2) However, Plaintiff does not provide further evidence that she brought the racial slurs to the attention of the Defendant. Plaintiff Matthews does not support her assertion that a causal connection exists between reporting the use of racial slurs, and the alleged retaliatory actions. Matthews has not met the burden of establishing a prima facie case of retaliation. Consequently, summary judgment based on counts IX and X is hereby GRANTED.

### B. Officer Willocks

Defendant Willocks requests this Court grant summary judgment in his favor, as to Count XI, which alleges retaliation for reporting the use of racial epithets concerning African–Americans under the

First Amendment of the U.S. Constitution and Section 1983.

In order to establish a prima facie case of retaliation, Plaintiff must establish that: (1) a statutorily protected expression existed; (2) adverse employment action was taken; and (3) a causal connection existed between the protected expression and the adverse action. *See Little,* 103 F.3d at 959.

Plaintiff alleges that she reported to Defendant Willocks that several male officers had made racial comments about African–Americans and, in retaliation, Defendant Willocks: (1) altered the terms of her employment; (2) retaliatorily sought payment of training costs; and (3) constructively discharged Plaintiff.

Defendant Willocks asserts that the three retaliatory actions that Plaintiff Matthews alleges occurred prior to his having any knowledge of Plaintiff's complaints. Willocks insists that the Plaintiff's complaint of racial slurs could not have been a motivating factor in retaliation. Defendant asserts that the Plaintiff cannot prove a causal connection.

Matthews does not refute this argument and, in fact, admits that there were only two instances where she made statements to her employer about any harassment, and only one instance occurred during her employment. Defendant Willocks asserts that a review of that statement's transcript reveals that Matthews never reported any racial slurs, thus the only other time Matthews could have reported any racial slurs would have been at the second statement, which occurred after her employment had terminated. (Willocks Motion for Summary Judgment p. 6)

Matthews alleges that she mentioned the use of racial slurs prior to termination of her employment (Plaintiff's Complaint, Exh. A, p. 2). However, Matthews does not provide any evidence that she mentioned these racial slurs to her employer prior to terminating her employment with the City. Matthews has not established that Defendant Willocks was aware of the racial slurs and, in turn, used bad faith when subjecting her to employment action. Therefore, Matthews has not established the causal connection necessary to prove a prima facie case of retaliation. The Court grants the motion for summary judgment based on Count XI.

## VII. NEGLIGENT RETENTION AND SUPERVISION

■ Defendant Willocks requests that the Court grant summary judgment in his favor on Count XII, which is a charge against Willocks on behalf of Plaintiff for negligent retention and supervision. In Florida, negligent retention is a viable cause of action. Negligent retention and supervision occurs when, during the course of employment, the employer becomes aware, or should have become aware, of problems with an employee that indicates his unfitness, and the employer fails to take further action such as investigation, discharge, or reassignment. *See Watson v. The City of Hialeah,* 552 So.2d 1146, 1148 (Fla. 3d DCA 1989). Further, liability attaches when an employer (1) knows or should know about the offending employee's unfitness and (2) fails to take appropriate action. *See Garcia v. Duffy,* 492 So.2d 435, 438–39 (Fla. 2d DCA 1986).

Plaintiff Matthews asserts that Defendant Willocks was grossly negligent in failing to take prompt remedial action against the male officers who were harassing Matthews. Plaintiff Matthews further asserts that Willocks knew of this harassment as early as September 1995, yet nothing was done to correct the situation and that Willocks acted in bad faith when he failed to act against the officers who were harassing Matthews.

■ Defendant Willocks asserts that he is not the Plaintiff's employer and consequently he is not liable under any of the Federal Employment laws or the FCRA. *See Urquiola v. Linen Supermarket,* 1995 WL 266582, *2 (M.D.Fla. March 23, 1995) (applied to FCRA); *see also Busby v. City of Orlando,* 931 F.2d 764, 772 (11th Cir. 1991) (applied to Title VII). This Court is

bound to follow the Eleventh Circuit's prior decision and, according to that decision, Defendant Willocks will not be deemed Matthews' employer. Therefore, Matthews cannot assert a claim against Willocks for negligent retention, because the Plaintiff does not satisfy the test required for such a claim. *See Garcia,* 492 So.2d at 438–39. Therefore, the motion for summary judgment on Count XII is granted.

## VIII. COUNTERCLAIM

Defendant City moves for summary judgment as to its counterclaim against Plaintiff Matthews. The claim is based upon the contract of employment between the parties, which included a clause calling for repayment of any training expenses incurred, should Plaintiff resign within three (3) years of completion of all training.

Defendant City argues that the contract provides explicitly that Matthews is responsible for repayment of training expenses, as stipulated in the agreement, because she resigned from the City prior to the expiration of three years from completion of training.

Matthews argues that the contract should not be upheld based on three reasons: (1) she was constructively discharged and thus her termination was initiated by the city; (2) she was sexually harassed and therefore, the City did not act in good faith; and (3) the reimbursement clause is a restraint on trade and is impermissible. Matthews' defenses initially fail, regarding constructive discharge and sexual harassment, as discussed earlier. Matthews only argument rests on whether the reimbursement clause was a restraint on trade.

Defendant City argues that the reimbursement clause is not a restraint of trade, but a mechanism to provide reimbursement for expenses incurred in hiring and training police officers that do not serve the City for a sufficient period of time. Further, the Defendant City asserts that an employee under such contract is free to seek employment elsewhere, but is obligated to reimburse the City for training costs upon early termination.

■ Where a contract is suspected of imposing a restraint of trade, a test of reasonableness must be applied under Florida Statute § 542.335(1)(c). Where this test has been applied, the use of such clauses to protect legitimate business interests such as extraordinary or specialized training has been deemed reasonable. *See Hapney v. Central Garage, Inc.,* 579 So.2d 127, 132 (Fla. 2d. DCA 1991). Plaintiff Matthews does not assert that the training was not specialized or extraordinary. Therefore, this clause protects a legitimate business interest. Consequently, the use of a reimbursement clause in Matthews' employment contract was reasonable.

Plaintiff Matthews asserts that the amount of training costs remains in dispute, and this Court concurs. Therefore, this Court determines that as to the Defendant City's counterclaim, summary judgment is granted in part, as to liability, and denied in part, as to the amount of damages.

## CONCLUSION

The Court has found that Plaintiff Matthews failed to a file a claim for sexual harassment within the requisite statute of limitations period. Further, Plaintiff Matthews did not qualify for the continuing violation exception. A majority of Matthews' allegations are time-barred. Based on this finding, the Court concludes that Matthews did not have sufficient evidence to prove a prima facie case of hostile work environment, disparate treatment, constructive discharge, and negligent retention. This Court further concludes that no genuine issue as to material facts exists in Plaintiff Matthews' claim of retaliation under the First and Fourteenth Amendments to the U.S. Constitution, Section 1983, and Florida Constitution. Accordingly it is

**ORDERED** that the motion for summary judgment based on Counts I, II, V,

VI, VII, VIII, IX, X, and XII is hereby **granted** in favor of Defendants and the motion for summary judgment as to Counts III and IV is **denied.** Furthermore, as to Defendant City's Counterclaim, the motion for summary judgment is **granted in part** in favor of Defendant City, as to liability, and **denied in part** as to the amount of damages.