**Bernadette SCELTA, Plaintiff,**

v.

**DELICATESSEN SUPPORT SERVICES, INC., Boar's Head Provisions Co., Inc., and Robert S. Martin, Defendants.**

No. 8:98–CV–2578–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

March 9, 2000.

Order Denying Reconsideration
March 27, 2000.

David P. Montgomery, The Montgomery & Walch Law Firm, Bradenton, FL, for Bernadette Scelta, plaintiff.

Kenneth George Turkel, Mitchell C. Robiner, Williams, Reed, Weinstein, Schifino & Mangione, P.A., Tampa, FL, William G. Salim, Jr., Moskowitz, Mandell, Salim & Simowitz, P.A., Ft. Lauderdale, FL, Jacqueline G. Veit, Martin S. Hyman, Golenbock, Eiseman, Assor & Bell, New York City, for defendants.

### *ORDER*

KOVACHEVICH, District Judge.

THIS CAUSE is before the Court on Defendants, Delicatessen Support Services, Inc.'s [hereinafter "Delicatessen"], and Boar's Head Provisions Co., Inc.'s [hereinafter "Boar's Head"], Motion for Summary Judgment on Claims of Sexual Harassment, (Dkt.77), filed on February 10, 2000, Plaintiff, Bernadette Scelta's, Opposition thereto, (Dkt.83), filed on February 22, 2000, Defendants' Motion for Leave to File Reply, (Dkt.88), filed on March 1, 2000, and Defendant's Motion for Leave to

File Reply, (Dkt.89), filed on March 1, 2000.

## BACKGROUND

Plaintiff originally brought this action against Defendants in the Circuit Court, in and for Sarasota County, Florida, on December 16, 1998. (Dkt.2). Defendants filed a Notice of Removal, on December 16, 1998, based on federal question jurisdiction. This case was subsequently removed to the United States District Court for the Middle District of Florida. (Dkt.1).

Plaintiff's Complaint alleges that Delicatessen is a subsidiary of Boar's Head, or that it is controlled by Boar's Head, has interlocking ownership and control, and has engaged in a common enterprise with Boar's Head. The alleged common enterprise between Delicatessen and Boar's Head acts as a wholesale food distributor and it, as well as each component of the common enterprise, employs over twenty-five (25) persons.

Plaintiff states that she was an employee of The Frank Brunckhorst Company, Boar's Head, and Delicatessen. While Plaintiff was an employee of The Frank Brunckhorst Company, Plaintiff was assigned to establish a principal place of operation for Boar's Head and Delicatessen in Sarasota County, Florida. Joseph Egan served as Plaintiff's supervisor and as an agent of Boar's Head and Delicatessen. Defendant Martin was also an agent of Boar's Head and Delicatessen and had the duty of supervising the employment decisions of Egan. Plaintiff states that she performed her duties, while employed with Boar's Head and Delicatessen, in an exemplary manner and never received a written or oral reprimand.

While residing in Sarasota County, Florida, Plaintiff and Egan, her immediate supervisor, had a short affair, which included sexual relations. Plaintiff states that Egan was married and did not want his wife or his co-workers to gain knowledge of the affair.

Counts I and II of Plaintiff's Complaint are claims for sexual discrimination against Boar's Head and Delicatessen. Count I alleges a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e [hereinafter "Title VII"]. Count II alleges a violation of the Florida Civil Rights Act of 1992, which is contained in Chapter 760 of the Florida Statutes [hereinafter "FCRA"]. Counts I and II assert that the actions and inactions of Boar's Head and Delicatessen constituted sexual harassment and a sexually hostile work environment.

Count IV(A) of Plaintiff's Complaint is a claim for battery against Defendant Martin. Plaintiff states that Defendant Martin touched Plaintiff without express or implied consent. As a result of the battery, Plaintiff alleges she endured great mental suffering, was forced to terminate her employment, suffered loss of opportunity for advancement, and suffered loss of her personal and professional reputation.

Plaintiff states that she has complied with all jurisdictional prerequisites for filing a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the FCRA, Chapter 760, Florida Statutes. Specifically Plaintiff states that on or about July 6, 1998, Plaintiff filed a charge of discrimination against her "employer," Boar's Head, Delicatessen, Egan, and Defendant Martin, with the EEOC and the Florida Commission of Human Relations. On or about July 13, 1998, the Florida Commission on Human Relations transferred Plaintiff's charge of discrimination to the EEOC, pursuant to Florida's status as a deferral state and the federal and state work share agreement. On or about August 27, 1998, the EEOC notified Plaintiff, after conducting its own investigation, that Plaintiff had a right to sue within ninety (90) days of her receipt of the notification. Plaintiff filed suit within the ninety (90) days allotted by the EEOC notice.

On June 3, 1999, this Court granted in part Defendants' Motions to Dismiss, (Dkts.15, 18, 22, 24), which dismissed Counts III, IV(B), V, and VI of Plaintiff's Complaint. In response to the Court's

Order on Defendants' Motion to Dismiss, Defendants, Delicatessen, Boar's Head, and Martin, filed a Renewed Motion to Dismiss, (Dkt.54), which was subsequently denied by this Court. On July 26, 1999, Defendant Martin filed a Motion for Summary Judgment requesting that this Court enter judgment for Defendant Martin on Count IV(A) of Plaintiff's Complaint. (Dkt.51). On September 24, 1999, Defendant Martin filed a Supplemental Motion for Summary Judgment. (Dkt.58). The Court denied Defendant Martin's Motion for Summary Judgment and Supplemental Motion for Summary Judgment on October 7, 1999. (Dkt.67).

### Standard of Review

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

> The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue of material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of gen-

uine issues of material fact. *See id.* That burden can be discharged by "showing ... that there is an absence of evidence to support the non-moving party's case." *Id.* at 323, 325, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in a light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir. 1979) (quoting *Gross v. Southern Railway Co.,* 414 F.2d 292, 297 (5th Cir.1969)).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of "nothing more than a repetition of his conclusional allegations," summary judgment is not only proper but required. *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

### Discussion

Defendants allege that summary judgment is justified because: Plaintiff failed to file a federal or state charge of discrimination within the time periods required under Title VII and the FCRA; Plaintiff conceded to having a consensual sexual affair with another co-worker; Plaintiff has failed to allege and prove that she was retaliated against for engaging in any form of statutorily-protected expression; and neither Title VII nor the FCRA confer a

cause of action upon an employee who claims to have been discriminated against after having engaged in a purely consensual affair with a supervisor.

## I. Statute of Limitations

Defendants main argument in support of summary judgment is that many of the events and conduct complained of are barred by the required three hundred (300) day statute of limitation for filing a charge of discrimination under Title VII.

Title VII requires that a charge of discrimination be filed with the EEOC within one hundred eighty (180) days of the alleged misconduct, or if the plaintiff has filed a charge of discrimination with a state agency, within three hundred (300) days of the alleged discriminatory actions. *See* 42 U.S.C. § 2000e–5(e)(1). The FCRA requires that a charge of discrimination be filed within three hundred sixty-five days (365) days of the alleged discriminatory conduct. Absent an exception from the statute of limitations, only the alleged actions that took place within the three hundred (300) or three hundred sixty-five (365) day statute of limitations are actionable.

■ Under the continuing violation doctrine, the three hundred (300) or three hundred sixty-five (365) day statute of limitation is extended to allow the inclusion of all actions contained within a policy of ongoing discrimination. *See Matthews v. City of Gulfport,* 72 F.Supp.2d 1328, 1334 (M.D.Fla.1999) (citing *Beavers v. American Cast Iron Pipe Co.,* 975 F.2d 792, 796 (11th Cir.1992)). To claim an extension of the applicable statute of limitations under the continuing violation doctrine, at least one occurrence of harassment must happen within the applicable statute of limitations. *See Matthews,* 72 F.Supp.2d at 1334 (citing *Waltman v. Int'l Paper Co.,* 875 F.2d 468 (5th Cir.1989)). When examining a claim of continuing violation, a district court is instructed to consider whether the allegations described as a continuing violation are related by: (1) subject matter; (2) frequency; and (3) perma-

nence. *See Roberts v. Gadsden Memorial Hosp.,* 835 F.2d 793, 800 (11th Cir.1988).

■ When analyzing the first prong of the continuing violation doctrine, whether alleged acts are related by subject matter, the court must ascertain whether the same type of discrimination is involved in each act and whether that same type of discrimination connects the events in a manner that evidences a continuing violation. *See Cardin v. Via Tropical Fruites, Inc.,* 1993 WL 945324 at *18 (S.D.Fla.1993); *Matthews,* 72 F.Supp.2d at 1334. In the case at hand, Plaintiff's Complaint contains allegations of sexual harassment, which includes, but is not limited to: an array of sexual comments concerning Plaintiff and other individuals; sexual gestures; and at least one instance of unwelcome touching. As Plaintiff's allegations all concern sexual harassment, Plaintiff's argument satisfies the first prong of the continuing violation doctrine.

The Court must also consider the frequency of the alleged discriminatory actions taken against Plaintiff. *See id.* Defendants assert that the alleged incidents of harassment committed against Plaintiff are isolated due to the gaps in time between the alleged occurrences. However, a gap in time between the occurrence of incidents of harassment does not automatically require the Plaintiff's argument to fail. Plaintiff has alleged that incidents of harassment occurred from January 1, 1996, until October 1, 1997. Plaintiff alleges, in part, that promotions were denied to Plaintiff, training was withheld, and various acts of sexual harassment continued between January 1, 1996, and October 1, 1997. Therefore, Plaintiff has satisfied the second prong of the continuing violation doctrine.

The third prong of the continuing violation doctrine, requires the Court to analyze the permanence of the alleged incidents of harassment. The Court must determine if the acts complained of were sufficiently permanent in nature so as to "trigger an employee's awareness of and

duty to assert his or her rights." *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983). In a case alleging hostile work environment harassment, "the employee would be alerted to a hostile work environment claim only after the acts of harassment were sufficiently severe or pervasive to alter the terms or conditions of her employment. . . ." *Otis v. Wyse*, 1994 WL 566943, at *4 (D.Kan.1994) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir.1989); *Purrington v. University of Utah*, 996 F.2d 1025, 1028–29 (10th Cir. 1993)); *see also Malone v. K–Mart Corp.*, 51 F.Supp.2d 1287, 1302 (M.D.Ala.1999). In addition, "a hostile work environment plaintiff typically will not be 'alerted' to his or her Title VII rights until the employer fails to take appropriate corrective actions." *Id.*

Plaintiff, in the case at hand, alleges that she continually suffered episodes of sexual harassment from January of 1996, to October of 1997. (Dkt. 75, Exhibits E, H). Plaintiff reported many of the incidents to supervisors and got the impression from those supervisors that the harassment would stop. (Dkt. 75, Exhibits E, H). After informing supervisors of the inappropriate behavior of Plaintiff's co-workers and supervisors, Plaintiff received good performance evaluations, a raise, a promotion, and was promised future promotions. Plaintiff states that she believed the harassment would stop. According to Plaintiff, it was not until September or October of 1997, that Plaintiff realized that the harassment would not stop. (Dkt. 75, Exhibit D). Upon learning that the harassment would not stop, Plaintiff submitted a letter of resignation. (Dkt. 75, Exhibit D). The final incident of alleged harassment occurred in October of 1997, when Plaintiff resigned from employment with Defendants. (Dkt. 75, Exhibit D).

■ As Plaintiff alleges various instances of sexual harassment which have, according to Plaintiff, created a hostile work environment, the Court will analyze the permanency of the alleged sexual harass-ment under the standards stated above. After examining Plaintiff's claims, the Court finds that Plaintiff has sufficiently alleged and provided supporting information to establish her genuine reliance on the actions of her supervisors in correcting the problems complained of. It was not until Plaintiff was allegedly constructively discharged, that Plaintiff became aware that the harassment would not end and that alleged tangible job detriments were forthcoming. Therefore, the Court finds that sufficient evidence has been provided to establish the lack of permanence to alert Plaintiff of a violation of her rights.

As Plaintiff has satisfied all three prongs of the continuing violation doctrine, the Court finds that Plaintiffs claims are not time barred. After viewing the evidence in a light most favorable to the non-moving party, the actions allegedly committed by Defendants also support the Court's finding that Defendants have engaged in a continuing violation of Plaintiff's rights.

## II. Sufficiency of Plaintiff's Claims

Defendants suggest that summary judgment is appropriate because Plaintiff's hostile work environment claim is substantively deficient. Defendants state that the "few alleged 'hostile' comments by [Defendant] Martin, though arguably boorish if in fact made, were neither physically threatening nor intimidating, were neither severe nor pervasive, did not render plaintiff incapable of performing her job (or otherwise affect a term or condition of [Plaintiff's] employment), and, according to [Plaintiff], did not cause her to quit her job." (Dkt.78).

In addition to the previous allegations, Defendants allege that Plaintiff's allegations concerning retaliation or quid pro quo harassment are without merit. Defendants state that Plaintiff has failed to establish that the sexual harassment complained of was based on unwanted sexual demands. (Dkt.78). Defendants state that Plaintiff's Complaint evidences nothing more than a "disgruntled lover to

whom the protections of the anti-discrimination statutes simply do not extend." (Dkt.78).

■ "Quid pro quo sexual harassment occurs when an employer changes an employee's conditions of employment because of their refusal to submit to sexual demands." *Virgo v. Riviera Beach Assocs. Ltd.,* 30 F.3d 1350, 1361 (11th Cir.1994); *see also Steele v. Offshore Shipbuilding, Inc.,* 867 F.2d 1311, 1315 (11th Cir.1989). To establish a *prima facie* claim of quid pro quo harassment under Title VII, the plaintiff must allege and prove: (1) that the plaintiff belonged to a protected class; (2) that the plaintiff was subjected to unwelcome sexual harassment; (3) that the harassment complained of is based on sex; and (4) that the employee's reaction to the harassment complained of affected tangible aspects of the employees compensation, or terms, conditions, or privileges of employment. *See Virgo,* 30 F.3d 1350; *Sparks v. Pilot Freight Carriers,* 830 F.2d 1554, 1557 (11th Cir.1987).

■ A *prima facie* claim of sexual harassment in a "pure hostile work environment action" usually necessitates the establishment of five elements. *See Messier v. Boardsen Assocs., Inc.,* 1996 WL 420881, at *2 (M.D.Fla.1996). The first three elements of quid pro quo harassment must be established and the Plaintiff must also establish that the harassment complained of affected a term, condition, or privilege of employment, in that it was sufficiently severe or pervasive to create an abusive working environment and that the employer is liable because the employer knew or should have known of the harassment, and failed to take prompt remedial action to remedy the violation. *See Messier,* 1996 WL 420881, at * 3. If the plaintiff alleges that the employer or a supervisor, acting as the employer's agent, engaged in both quid pro quo and hostile work environment harassment, the plaintiff does not have to allege the elements of respondeat superior in order to establish a *prima facie* case of harassment. *See id.;*

*see also Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554 (11th Cir.1987).

■ Title VII prohibits employment discrimination on the basis of gender. 42 U.S.C. § 2000e. However, Title VII is not a "general civility code" and is not meant to prohibit workplace or employee interaction. *See Faragher,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Conduct prohibited by Title VII must be sufficiently severe and pervasive, so as to alter a term, condition, or privilege of employment. *See id.* Whether or not the alleged harassing conduct is sufficiently severe and pervasive is determined by a reasonable person test. *See id.* If a reasonable person in the plaintiff's position, considering all of the circumstances, would find the conduct sufficiently severe and pervasive, so as to alter a term or condition of employment, then the alleged conduct is sufficiently severe and pervasive. *See id.*

In the case at hand, Plaintiff's Complaint makes several allegations in relation to the elements of a *prima facie* case for sexual harassment. The first requirement, that Plaintiff must be a member of a protected class, is met. Plaintiff is a female and has referred to herself as being a female throughout the Complaint.

■ The second requirement, that Plaintiff be subjected to unwelcome sexual harassment, was also alleged throughout Plaintiff's Complaint and the record. (Dkts. 2, 75, Exhibits E, H). Specifically, Plaintiff alleges that:

18. During the period of her employment by Boar's Head and Delicatessen, [Plaintiff's] superiors engaged in sexual harassment of [Plaintiff], and other female employees, and created a sexually hostile work environment . . .

18.5. In April, 1996, at a sales meeting, [Plaintiff] and other female employees were subjected to approximately twenty [20] minutes of comments about their breasts, including comments that before one of the female employees left the company[,] as a result of her resignation,

[Defendant] Martin would like a 'cast of her body', however, when [Plaintiff] objected, [Defendant] Martin and another male employe[e] left the room.

18.9. On or about the week of June 6, 1996, [Defendant] Martin entered the office of [Plaintiff], grabbed his crotch and started discussing the size of his genitals, until [Plaintiff] objected and [Defendant] Martin made cursory remarks and left.

(Dkt.2). Defendants appear to suggest to this Court that because Plaintiff was engaged, at one point in time, in a consensual sexual relationship with a supervisor, Plaintiff is, therefore, required to endure and accept any form of sexual harassment she may encounter while employed by Defendants. This is not the case. There comes a point in time when consensual sexual relations end and unwelcome sexual harassment begins. While this may be difficult for a plaintiff to prove, the Court will not deny a plaintiff the opportunity to offer proof on the matter. In addition, even if Plaintiff's consensual sexual relationship with Egan had not ended, Plaintiff should not be forced to endure sexual harassment at the hands of other supervisors or co-workers. The fact that Plaintiff may have had, at one point in time, a consensual sexual relationship with a supervisor does not provide that supervisor, or any other supervisor or co-worker, with a right to sexually harass Plaintiff. Plaintiff has alleged and provided sufficient evidence that Plaintiff did not welcome Defendants alleged sexually harassing conduct and is not merely a "jilted lover" as Defendants would have this Court believe. Therefore, Plaintiff has satisfied the second requirement of establishing a *prima facie* case of quid pro quo sexual harassment.

The third requirement for a *prima facie* case of harassment, that the harassment complained of be based on sex, was also met in Plaintiff's Complaint and the record. (Dkts. 2, 75, Exhibits E, H). Plaintiff specifically alleges that:

18. During the period of her employment by Boar's Head and Delicatessen, [Plaintiff's] superiors engaged in sexual harassment of [Plaintiff], and other female employees, and created a sexually hostile work environment . . .

18.1. In or about February, 1996, when [Plaintiff] contacted [Defendant] Martin to report to [Defendant] Martin on the results of [Plaintiff's] efforts in establishing the Sarasota office, [Defendant] Martin opened the conversation by, once again, commenting upon the size of [Plaintiff's] breasts . . .

18.4. In March, 1996, at a sales meeting, [Plaintiff] was called into the office of one of her superiors, at which meeting [Defendant] Martin was present. During that meeting, [Defendant] Martin again commented on the size of [Plaintiff's] breasts and made other lewd comments about her breasts.

18.5. In April, 1996, at a sales meeting, [Plaintiff] and other female employees were subjected to approximately twenty [20] minutes of comments about their breasts, including comments that before one of the female employees left the company[,] as a result of her resignation, [Defendant] Martin would like a 'cast of (her) body' . . .

22. Boar's Head, Delicatessen[,] and its agents, Egan and [Defendant] Martin, created, tolerated, and encouraged a sexually hostile work environment, under which it was generally believed by employees that an employee was expected to ignore or condone the sexually charged work environment or leave their career with those companies.

(Dkt.2).

The fourth requirement to prove a *prima facie* case of sexual harassment, that the harassment must have been sufficiently severe and pervasive to alter a term, condition, or privilege of the employment relationship, is also met. Plaintiff's Complaint alleges thirteen (13) specific instances of harassment. (Dkts. 2, 75, Exhibits E, H). Plaintiff also alleges that because of the alleged sexually harassing remarks and sexually harassing physical contacts

while at work, Plaintiff "felt uncomfortable and embarrassed at work, and dreaded coming into contact with Defendant Martin and Egan." (Dkts. 2, 75, Exhibits E, H). Plaintiff states that she endured the alleged harassment due to a common belief that employees were expected to condone and ignore the sexual harassment or leave their careers with Boar's Head and Delicatessen. Plaintiff claims to have suffered extreme detriment to her emotional well being and mental health, as well as damage to the pride Plaintiff had in her work, interference with Plaintiff's concentration levels while working, and acute emotional distress. (Dkts. 2, 75, Exhibits E, H). Plaintiff states that as a result of the discriminatory conduct, employment became impossible and Plaintiff offered to resign with the condition that the effective date of resignation be delayed until Plaintiff found another employment opportunity. On October 1, 1997, Plaintiff was forced to revise her resignation, as the discrimination had not ceased. (Dkts. 2, 75, Exhibits E, H). Plaintiff arranged to resign from Boar's Head and Delicatessen without another employment opportunity. Plaintiff specifically alleged that, "[a]s a direct and proximate result of this systematic and repeated harassment, [Plaintiff] suffered loss of opportunity for advancement at Delicatessen and Boar's Head, loss of opportunity for advancement within the food distribution market, and loss of her professional and personal reputation." (Dkt.2).

In addition to the elements necessary to prove and allege a claim of quid pro quo harassment, in order to establish a hostile work environment claim, Plaintiff must also allege and prove that the harassment complained of affected a term, condition, or privilege of her employment and that the employer is liable because the employer knew, or should have known, of the harassment, and failed to take prompt remedial action to remedy the violation.

As the Court previously discussed, Plaintiff has satisfactorily alleged that the harassment was severe and pervasive enough to alter a term, condition, or privilege of her employment with Defendants.

According to Plaintiff, she has undergone at least thirteen separate instances of sexual harassment. (Dkt. 75, Exhibit H). As a result of this harassment, Plaintiff has allegedly undergone extreme mental anguish and has been constructively discharged from her employment with Defendants. (Dkt. 75, Exhibit H).

In addition, the Court finds that Plaintiff has sufficiently alleged throughout the record that Plaintiff's employer knew or should have known of the harassment and that Defendants failed to take prompt remedial action to remedy the violations. (Dkt. 75, Exhibits E, H). Plaintiff notified supervisors on many occasions of the alleged sexually harassing conduct. (Dkt. 75, Exhibits E, H). Plaintiff provided Defendants with ample time to remedy the situation, however, it eventually became apparent that the situation was not remedied. (Dkt. 75, Exhibits E, H). As a result, Plaintiff was allegedly force to resign.

■ After thoroughly analyzing this case, the Court finds that summary judgment is not warranted. The Court finds that Plaintiff has sufficiently alleged, and provided sufficient proof of, for purposes of avoiding the entry of summary judgment, a *prima facie* case of quid pro quo harassment and hostile environment harassment, under both Title VII and the FCRA.

In light of this Order, and the Court's Order dated March, 8, 2000, Defendants' Motions for Leave to File Reply, (Dkts.88, 89), are moot, and therefore, are denied. Accordingly, it is

**ORDERED** that Defendants' Motion for Summary Judgment on the Sexual Harassment Claim, (Dkt.77), be **DENIED;** Defendants Motion for Leave to File Reply, (Dkt.88), be **DENIED** as moot; and Defendant's Motion For Leave to File Reply, (Dkt.89), be **DENIED** as moot.

### ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION

THIS CAUSE is before the Court on Defendants, Delicatessen Support Ser-

vices, Inc.'s and Boar's Head Provisions Co., Inc.'s, Motion for Reconsideration, (Dkt.94), filed on March 20, 2000.

## STANDARD OF REVIEW

The proper standard of review for the Court when considering a motion to reconsider is set forth in *Prudential Securities, Inc. v. Emerson*, 919 F.Supp. 415 (M.D.Fla.1996). The Court in *Prudential* held that "[a] Court will not alter a prior decision absent a showing of clear and obvious error where 'the interest of justice' demand[s] correction." *Id.* (quoting *American Home Assurance Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir.1985)). Furthermore, the Court held that motions for reconsideration "should not be used to raise arguments which could, and should, have been [previously] made." *Prudential*, 919 F.Supp. at 417.

 A motion for reconsideration must demonstrate why the court should reconsider its prior decision and "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Cover v. Wal–Mart Stores, Inc.*, 148 F.R.D. 294 (M.D.Fla.1993). This Court has recognized three (3) grounds justifying reconsideration of an order: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice. *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D.Fla.1994). Reconsideration of a previous order is an extraordinary measure and should be applied sparingly in the interests of finality and conservation of scarce judicial resources. *See Pennsylvania Ins. Guar. Ass'n v. Trabosh*, 812 F.Supp. 522 (E.D.Pa.1992).

On March 9, 2000, this Court entered an Order denying Defendants' Motion for Summary Judgment. (Dkt.92). Defendants request that this Court reconsider its Order denying Defendants' Motion for Summary Judgment because Defendants believe this Court has committed clear and obvious error.

## DISCUSSION

After considering the arguments presented by Defendants, this Court finds that in the interest of justice reconsideration is not warranted. Defendant has failed to show this Court that reconsideration is warranted because of: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or manifest injustice. However, in the interest of clarity, the Court will address Defendants' arguments in support of reconsideration.

Defendants suggest that reconsideration of the Court's March 9, 2000, Order is necessary to correct clear error and manifest injustice. Defendants' Motion for Reconsideration states that this Court: (1) failed to cite sufficiently to evidence within the March 9, 2000, Order denying summary judgment; (2) relied predominantly on Plaintiff's Complaint and the factual allegations contained therein; (3) misconstrued the nature of Plaintiff's claim; (4) misapprehended certain of Defendants' arguments; (5) failed to acknowledge or give dispositive effect to Plaintiff's unequivocal admissions; and (6) failed to apply controlling case law.

## I. Statute of Limitations

Defendants state that the Court erred in finding that Plaintiff's claims of sexual harassment and hostile work environment harassment were not time-barred under the continuing violation doctrine, as set out within *Matthews v. City of Gulfport*, 72 F.Supp.2d 1328, 1334 (M.D.Fla.1999). According to Defendants, no evidence exists to prove that Plaintiff suffered from any sexually hostile acts within the three-hundred (300) days prior to filing a charge of discrimination with the EEOC. Defendants state that because Plaintiff has allegedly not suffered any sexually hostile acts against her during the three-hundred (300) days prior to filing a Charge of Discrimination with the EEOC, Plaintiff is not entitled to benefit from the continuing vio-

lation doctrine. Specifically, Defendants allege that

The "continuing violation" exception requires that at least one sexually hostile act occur within the statutory period and that the hostile acts occurring within the statutory period be severe and pervasive enough to support a claim under applicable law, as most recently enunciated in *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir.1999), a case not mentioned in the Order. *See e.g., Delaware State College v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980).

In addition to *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir.1999), and *Delaware State College*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), Defendants also cite to *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1434 (11th Cir.1998), and *Minor v. Ivy Tech State College*, 174 F.3d 855 (7th Cir.1999).

In addition to the previous allegations, the Court notes that Defendants allege that the Court's March 9, 2000, Order "does not distinguish between alleged sexually hostile acts and the claimed effects of such acts—*e.g.*, 'constructive discharge'— which do not extend the statutory filing requirements or otherwise create a 'continuing violation' exception." According to Defendants, the Court's March 9, 2000, Order "simply cannot be reconciled with the law on 'continuing violations' or with the Court's prior holdings."

The Court has considered Defendants' allegations concerning whether Plaintiff's claims are time-barred, and, once again, finds that Plaintiff's claims of sexual harassment and a sexually hostile work environment are not time-barred. As this Court stated in *Matthews*, the continuing violation exception allows for an extension of the limitations period based on the claims of acts, which are committed under an ongoing policy of discrimination or harassment. *See Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992). To invoke the continuing violation exception, there must be at least one incident of harassment occurring within the three-hundred (300) day statute of limitations. *See Waltman v. Int'l Paper Co.*, 875 F.2d 468 (5th Cir.1989). In determining whether the continuing violation exception applies, a court is instructed to consider whether the allegations of sexual harassment are related in subject matter, frequency, and permanence. *See Roberts v. Gadsden Memorial Hosp.*, 835 F.2d 793, 800 (11th Cir.1988).

When determining whether allegations of sexual harassment are related in subject matter, the Court must look to the type of discrimination alleged. If the alleged acts of harassment or discrimination involve a similar type of discrimination or harassment, then the first factor of the continuing violation exception, subject matter, has been met. *See Cardin v. Via Tropical Fruits, Inc.*, 1993 WL 945324 at *18 (S.D.Fla.1993). As the Court previously stated within the March 9, 2000, Order, Plaintiff has satisfied the first factor of the continuing violation exception. Plaintiff's Complaint and the record in this case sufficiently establishes that Plaintiff's allegations of harassment and discrimination all relate to sex. (Dkt.2) (Dkt. 31, exhibit B) (Dkt. 53, exhibits C, D) (Dkt. 75, exhibits D, E, H, Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt. 77, exhibits B, C, Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt.79) (Dkt.80).

The Court must also consider the frequency of the alleged discriminatory actions taken against Plaintiff when determining whether the continuing violation exception applies. *See id.* Plaintiff, in the case at hand, has stated within the Complaint and record that the alleged incidents of harassment occurred continuously during her employment with Defendants, and more specifically from January 1, 1996, until October 1, 1997. (Dkt.2) (Dkt. 31, exhibit B) (Dkt. 53, exhibits C, D) (Dkt. 75, exhibits D, E, H, Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt. 77, exhibits B, C, Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt.79) (Dkt.80). While Defendants asserted within Defendants' Motion for Sum-

mary Judgment that the incidents complained of were isolated, the Court found sufficient evidence to show otherwise within the record, especially within those exhibits previously cited by the Court. (Dkt.2) (Dkt. 31, exhibit B) (Dkt. 53, exhibits C, D) (Dkt. 75, exhibits D, E, H, Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt. 77, exhibits B, C, Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt.79) (Dkt.80).

The third prong of the continuing violation exception requires the Court to analyze the permanence of the alleged incidents of harassment. *See Matthews*, 72 F.Supp.2d at 1334. Under the third prong of the continuing violation exception, the Court must determine whether the acts complained of by Plaintiff were sufficiently permanent in nature so as to "trigger [her] awareness of and duty to assert [ ] her rights." *Berry v. Board of Supervisors of L.S.U.*, 715 F.2d 971, 981 (5th Cir.1983). In a case alleging hostile work environment harassment, "the employee would be alerted to a hostile work environment claim only after the acts of harassment were sufficiently severe or pervasive to alter the terms or conditions of her employment. . . ." *Otis v. Wyse*, 1994 WL 566943 at *4 (D.Kan.1994) (citing *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 476 (5th Cir.1989); *Purrington v. University of Utah*, 996 F.2d 1025, 1028–29 (10th Cir. 1993)); *see also Malone v. K–Mart Corp.*, 51 F.Supp.2d 1287, 1302 (M.D.Ala.1999). In addition, "a hostile work environment plaintiff typically will not be 'alerted' to his or her Title VII rights until the employer fails to take appropriate corrective actions." *Id.*

While Defendants state that this Court failed to find that any sexually hostile acts were suffered by Plaintiff within the three-hundred (300) day statute of limitations, the Court disagrees. The Court specifically found, and provided supporting citation, that Plaintiff has alleged that she continually suffered episodes of sexual harassment from January of 1996, until October of 1997. (Dkt.92) (citing Dkt. 75, exhibits E, H). In order to be abundantly clear to Defendants, the Court finds further support for Plaintiff's allegations that she suffered continuous harassment from January of 1996, to October of 1997, throughout the entire record of this case. (Dkt.2) (Dkt. 31, exhibit B) (Dkt. 53, exhibits C, D) (Dkt. 75, exhibits D, Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt. 77, exhibits B, C. Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt.79) (Dkt.80). In addition to finding support for Plaintiff's statements that Plaintiff suffered continual sexual harassment, the Court also specifically found that Plaintiff reported many of the alleged sexually harassing incidents to her supervisors and got the impression from those supervisors that the harassment would stop. (Dkt.92) (citing Dkt. 75, exhibits E, H). The Court found evidence within the record that Plaintiff did not realize until September or October of 1997, that the harassment would not stop. (Dkt.92) (citing Dkt. 75, exhibit D). Under the law set out within *Otis, Waltman, Purrington,* and *Malone,* this Court found that Plaintiff genuinely relied on the actions of her supervisors in correcting the problems complained of. (Dkt.92). It was not until September or October of 1997, that Plaintiff became aware of the fact that the harassment would not stop. (Dkt.92). As Plaintiff did not become aware until September or October of 1997, that her rights were being violated, the Court found that Plaintiff satisfied the third prong of the continuing violation exception and also found that sufficient evidence existed to show that Plaintiff had in fact incurred at least one sexually hostile incident within the three-hundred (300) day statute of limitations. (Dkt.92).

As Plaintiff has provided sufficient evidence within the record to satisfy the requirements for the application of the continuing violation exception, the Court found that the continuing violation exception applied to Plaintiff's claims. As the continuing violation exception applies to Plaintiff's claims, Plaintiff's claims are not time-barred. (Dkt.92).

In considering Defendants' Motion for Reconsideration, on the issue of the continuing violation exception, the Court thoroughly considered and researched the issues presented by Defendants' Motion. In the midst of considering Defendants' allegations, the Court was alerted to several matters that have previously been addressed by this Court and directed toward Defendants. In support of Defendants' arguments concerning the continuing violation exception, Defendants state that:

The "continuing violation" exception requires that at least one sexually hostile act occur within the statutory period and that the hostile acts occurring within the statutory period be severe and pervasive enough to support a claim under applicable law, as most recently enunciated in *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir.1999), a case not mentioned in the Order. *See e.g., Delaware State College v. Ricks*, 449 U.S. 250, 257–58, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) ... *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1434 (11th Cir.1998); *Minor v. Ivy Tech State College*, 174 F.3d 855 (7th Cir.1999)....

(Dkt.94). The Court has considered and analyzed the cases cited by Defendant, in addition to other applicable case law not cited by Defendants, and after thoroughly analyzing those cases finds that they do not affect the Court's previous decision. In fact, as the Court has previously warned Defendants in relation to other motions and responses filed in this case, Defendants have suggested that the above cited cases state that the Court is required to find that at least one sexually hostile act occurred within the statutory period and that the hostile acts occurring within the statutory period be severe and pervasive enough to support a claim under applicable law. The cases cited by Defendants, while they do relate in some fashion to sexual harassment or the continuing violation doctrine, do not state that both requirements stated by Defendants are required. Defendants, once again, border on establishing the appearance that Defendants have acted in an improper manner under either Federal Rule of Civil Procedure 11, or the Model Rules of Professional Conduct of the American Bar Association, as modified and adopted by the Supreme Court of Florida.

Federal Rule of Civil Procedure 11 states, in pertinent part, that:

(b) By presenting to the Court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or a needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

(1) **How Initiated**

(B) **On Court's Initiative.** On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and di-

recting an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

In addition to submitting a motion that contains information that borders on creating the appearance that Defendants have acted in a misleading or improper manner, Defendants have provided an incorrect citation to, at least, one case within the Motion for Reconsideration. In addition to providing an incorrect citation to, at least, one case, Defendants have also completely failed to comply with this Court's Order of Procedure dated December 21, 1998. (Dkt.5). Within this Court's Order of Procedure, (Dkt.5), the Court Ordered that:

> [E]ach party must submit copies of **all** cases cited in any pleading, memorandum of law, or **motion** filed; discovery excepted. The cases should be clear, legible copies and should be bound and indexed for ease of review. Any case cited, for which a copy is not submitted, **may not be considered in review of the pleading, memorandum of law, or motion.**

(Dkt.5). Defendants have failed to comply with this Court's Order of Procedure in the manner cited above. While Defendants did submit a document titled Defendants' Notice of Filing Cases in Support [sic] Defendants' Motion for Reconsideration, or, in the alternative, Certification Pursuant to 28 U.S.C. § 1292(b), Defendants included only three cases within that notice. Defendants have clearly cited to more than three cases within the Motion for Reconsideration. It is exactly the situation described above, that this Court wishes to avoid by requiring all parties to submit copies of the cases cited within their pleadings, motions, and memoranda. Defendants have provided an incorrect citation to a case and have failed to provide a copy of that case to the Court.

In connection with the above stated issues, the Court has given Defendants the benefit of the doubt. The Court realizes that counsel must often argue issues to a court that are not directly supported by law. However, when making this argument to a court, counsel should not attempt to mislead the court or act in any improper manner, especially with regard to the cases cited. Likewise, the Court will attribute the fact that Defendants have provided an incorrect citation to this Court as a "clerical error," but reminds Defendants that this Court will not condone misleading practices. As this Court stated in the Order of Procedure, the Court may *sua sponte* impose sanctions pursuant to Rule 11, Fed.R.Civ.P., when any pleading, including motions and responses thereto, violates the spirit of Rule 11. This Court will not hesitate to enforce Rule 11, on its own motion, where a party or counsel of record has clearly violated the rule.

As this Court finds that Plaintiff has provided sufficient evidence to support a finding that the continuing violation doctrine applies, Defendants Motion for Reconsideration, on the issue of the continuing violation exception, is denied.

II. Quid Pro Quo Harassment

In addition to Defendants' arguments concerning the continuing violation doctrine, Defendants also state that this Court, through the March 9, 2000, Order, "endorses a 'quid pro quo' sexual harassment theory which [P]laintiff did not allege in her Complaint and which she did not advance in her opposition papers." (Dkt.94). Defendants state that no reference to a quid pro quo or retaliation claim is made within any portion of the record. In addition, Defendants state that the issue is not whether Plaintiff was subjected to unwelcome sexual comments and gestures, but whether Plaintiff was subjected to unwelcome sexual demands. (Dkt.94).

The Court has once again, considered Defendants' arguments with regard to an alleged quid pro quo or retaliation claim, and finds that Defendants' Motion for Reconsideration on this issue must also be denied. Defendants have submitted nothing to this Court that would require this

Court to change its previous ruling. Defendants, once again, appear to assert that Plaintiff was merely subjected to a tangible job detriment after a consensual sexual relationship between Plaintiff and a supervisor was ended. This is not the case. While Plaintiff admits that she previously engaged in a consensual sexual relationship with one of her supervisors, that is not all Plaintiff has alleged throughout the record of this case. Plaintiff alleges numerous instances of sexual harassment throughout the record. (Dkt.2) (Dkt. 31, exhibit B) (Dkt. 53, exhibits C, D) (Dkt. 75, exhibits D, E, H, Scelta 5, Scelta 18, Scelta 40, Scelat 41) (Dkt. 77, exhibits B, C, Scelta 5, Scelta 18, Scelta 40, Scelta 41) (Dkt.79) (Dkt.80). Plaintiff was not merely subjected to alleged sexual harassment from the supervisor with which she had a consensual sexual affair.

In addition, the Court would like to point out to Defendants, that while Plaintiff never mentions "quid pro quo" sexual harassment within her Complaint, Plaintiff does allege that Defendants have committed sexual harassment, sexual discrimination, and have created a sexually hostile work environment. (Dkt.2).

"Sexual harassment is a form of sex discrimination prohibited by Title VII[,]" and the FCRA. *See Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998) (stating that because the FCRA is modeled after Title VII, the FCRA is subject to Title VII analysis); *Rosenbaum v. Southern Manatee Fire and Rescue District,* 980 F.Supp. 1469, 1473 (M.D.Fla.1997) (citing *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). When making a claim of sexual harassment, there are two (2) possible forms that can be alleged: hostile work environment and quid pro quo. *See Rosenbaum,* 980 F.Supp. at 1473. In order to prove a *prima facie* case for sexual harassment, a plaintiff must prove that: 1) plaintiff belongs to a protected class of individuals; 2) plaintiff was subjected to unwelcome sexual harassment; 3) the harassment complained of was based on sex; 4) the harassment was

sufficiently pervasive and severe, so as to alter a term, condition, or privilege of employment and create an abusive environment; and 5) respondeat superior. *See Meritor,* 477 U.S. at 63, 106 S.Ct. 2399. The EEOC guidelines state that the trier of fact must determine the existence of sexual harassment by examining the totality of the circumstances. *See Meritor,* 477 U.S. at 73, 106 S.Ct. 2399.

As Plaintiff alleged with her Complaint that Defendants committed sexual harassment, sexual discrimination, and created a sexually hostile working environment, Plaintiff has sufficiently alleged that all three claims of harassment exist, to put Defendants on notice. If Plaintiff does not desire to pursue any one of these claims, than Plaintiff can voluntarily dismiss that portion of the Complaint.

The Court would also like to point out to Defendants that Defendants brought up the issue of quid pro quo harassment within the Motion for Summary Judgment that was previously denied by this Court. The Court did not pull this issue from thin air. Defendants brought up this issue within the Motion for Summary Judgment and the Court has entered an Order on that issue and other issues contained within Defendants' Motion for Summary Judgment.

As Defendants have failed to show anything to this Court that suggests that this Court erred in Denying Defendants' Motion for Summary Judgment, the Court finds that reconsideration is not warranted. Defendants have failed to show this Court that any intervening change in controlling law has occurred, that any new evidence is available, or that a need to correct clear error or manifest injustice has arisen, therefore, reconsideration is not warranted.

The Court would also like to remind Defendants that while Defendants have alleged that this Court completely disregarded the record evidence within this case, that is not the case. This Court specifically cited to record evidence within

the Court's March 9, 2000, Order, and entered that Order only after considering the entire record of this case. In addition, all parties to this action were told that this Court would take any motion for summary judgment and all materials in support or in opposition thereto under advisement as of the last day for filing pleadings pertaining to the motion for summary judgment, through the Order of Procedure issued by this Court. While Defendants suggest that this Court failed to consider record evidence in support of Defendants' allegations, this is not the case. This Court considered all of the allegations and evidence in a light most favorable to the non-moving party, and found that distinct factual issues exist within this case. It is not proper for this Court to decide issues of fact on a motion for summary judgment.

III. Certification Pursuant to 28 U.S C. § 1292(b)

Defendants request that in the event this Court finds that reconsideration of the Court's March 9, 2000, Order is not warranted that this Court certify the issues brought forth by Defendants within the Motion for Reconsideration to the United States Court of Appeals for the Eleventh Circuit. Defendants state that certification is needed to resolve controlling questions of law as to which there is evidently substantial ground for differing opinions. In support of this request, Defendants provide one paragraph of argument and cite to one case. The Court has considered Defendants' arguments and supporting law and finds that Defendants have provided nothing to this Court that would suggest the existence of a substantial ground for difference of opinion. Certification of the issues requested by Defendants to the Eleventh Circuit Court of Appeals is not warranted merely because Defendants disagree with this Court's Orders. As Defendants have submitted nothing to show that the issues raised by Defendants warrant certification to the Eleventh Circuit Court of Appeals, this Court denies Defendants' request. Accordingly, it is

**ORDERED** that Defendants, Delicatessen Support Services, Inc.'s and Boar's Head Provisions Co., Inc's, Motion for Reconsideration or, in the alternative, Certification Pursuant to 28 U.S.C. § 1292(b), (Dkt.94), be **DENIED.**