Evette **ROUSSELLE,** Plaintiff,

v.

**GTE DIRECTORIES CORPORATION,** Defendant.

No. 8:97–CV–1615–T–17E.

United States District Court, M.D. Florida, Tampa Division.

Feb. 22, 2000.

F. Ronald Fraley, Fraley & Fraley, P.A., Tampa, FL, Joseph L. Rousselle, Jr., Action Legal Center, P.A., Tampa, FL, for Evette Rousselle, plaintiff.

Lansing C. Scriven, Kelley C. Howard, Julie S. Sneed, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for GTE Directories Corporation, defendant.

## ORDER ON DEFENDANT'S DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause comes before the Court on Defendant's Dispositive Motion for Summary Judgment (Dkt.29), Memorandum of Law (Dkt.30), and Plaintiff's Opposition (Dkt.43).

### INTRODUCTION

On September 19, 1999, Plaintiff filed her Second Amended Complaint (Dkt.23) for sexual harassment, alleging a hostile work environment and retaliation under Title VII. Specifically, in Count I, Plaintiff claims that she was employed in a hostile work environment due to ongoing sexual harassment by Defendant's District Sales Manager, Eric Walloga, from February 1, 1996 through her resignation on December 6, 1996. In Count II, Plaintiff claims that Defendant retaliated against Plaintiff following her report to Defendant's Human Resources department and the EEOC. Defendant moves for summary judgment on two grounds: (1) that it is entitled to an affirmative defense which bars Plaintiff's claim of hostile work environment and (2) that Plaintiff failed to present a *prima facie* case for retaliation.

### FACTUAL BACKGROUND

In February, 1994, Plaintiff was employed by Defendant as an "inside" salesperson, which entailed selling Yellow Pages advertisements over the telephone. Plaintiff first encountered Mr. Walloga at a GTE employee conference where he commented to her on her looks. In February, 1996, Plaintiff was promoted to an "outside" sales position in the Florida Premise division. This job entailed extensive traveling with other sales representatives for the purpose of "canvassing" or setting up a satellite office in a given location. Mr. Walloga was Plaintiff's immediate supervisor.

On or about February 23, 1996, Mr. Walloga accompanied Plaintiff on her first sales call to a client while on a "canvassing" trip in New Port Richey. After completing the call, while riding in Mr. Walloga's car, Mr. Walloga told Plaintiff how attractive she was and how easy her life would be if she got together with him. Plaintiff told Mr. Walloga that she was not interested. When Plaintiff returned to the St. Petersburg office, Plaintiff immediately complained to Mary Rawlins, GTE Human Resources Administrator, about Mr. Walloga's conduct. Ms. Rawlins instructed Plaintiff not to discuss Mr. Walloga's behavior with anyone. The following week, Ms. Rawlins told Plaintiff that she had spoken to Mr. Walloga.

Subsequently, from February to November of 1996, Mr. Walloga accompanied Plaintiff on several "canvassing" trips as her supervisor. While on these trips, Mr. Walloga would make Plaintiff feel indebted to him, and make several attempts to touch, hug, or grope Plaintiff. In one instance, Mr. Walloga entered Plaintiff's hotel room while Plaintiff was sleeping and attempted to get into bed with her. Mr. Walloga was intoxicated and had obtained a key to Plaintiff's room from the front desk.

Plaintiff reported each incident of harassment to Ms. Rawlins within days of the occurrence. In the summer of 1996, in the course of seeking an update from Ms. Rawlins on her complaint, Plaintiff spoke with Laura Strickland, Regional Human Resource Manager, for the first time. Plaintiff asked Ms. Strickland if she knew of anything going on with her case. Ms. Strickland told Plaintiff that she "was unaware of anything."

On November 11, 1996, Plaintiff again spoke to Ms. Rawlins about Mr. Walloga, and complained about another GTE employee, Frank DeVito, who was using inappropriate language. On November 12, 1996, Plaintiff told Ms. Rawlins about a call she received from Mr. Walloga that afternoon. Mr. Walloga had told Plaintiff that he missed her and he wanted to meet with her. Ms. Rawlins suggested that Plaintiff set up a meeting with Mr. Walloga and take someone along with her. When Mr. Walloga heard that Plaintiff would be accompanied by someone else, Mr. Walloga canceled the meeting. Later that day, Ms. Strickland paged Plaintiff, and told her to take a paid leave of absence pending the department's investigation into Plaintiff's complaint against Mr. Walloga.

On November 14, 1996, Plaintiff met with Ms. Strickland after Plaintiff contacted the EEOC. Ms. Strickland questioned Plaintiff as to why she went to the EEOC when GTE had not completed its investigation. On November 18, 1996, Plaintiff filed a Charge of Discrimination and affidavit with the EEOC against GTE claiming sexual discrimination under Title VII.

On November 22, 1996, Plaintiff submitted to an Independent Forensic Psychiatric Examination performed by psychiatrist, Dr. Barbara Stein. On December 6, 1996, Plaintiff was called to a meeting with Ms. Strickland, Ms. Rawlins, and GTE's legal counsel, David Yamaguchi, to discuss the investigation of Plaintiff's sexual harassment claim against Mr. Walloga. Ms. Strickland told Plaintiff that they had found no wrongdoing and, based upon Plaintiff's medical examination, Plaintiff should seek ongoing counseling. Ms. Strickland offered Plaintiff a sales position in the Tampa Premise division, where Plaintiff's salary and benefits would remain the same. The only difference with the new position was that travel was not required. Plaintiff told human resource personnel that she wanted to remain in the Florida Premise because of the opportunity to travel. Ms. Strickland told Plaintiff to report to her new position the following Monday and that she would be monitored as necessary. Plaintiff then resigned her employment.

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. Rule 56(c). Consequently, the moving party bears the burden of initially proving that no issue of material fact exists. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The *Celotex* case also held that Rule 56(e) requires the non-moving party to go beyond the pleadings in establishing whether there are specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

A genuine issue exists where the record, taken as a whole, contains evidence "such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is the court's responsibility to examine the evidence in the record to determine whether there is a genuine issue for trial. *See id.* at 249, 106 S.Ct. 2505. If, upon examination, the evidence is not probative and the non-moving party fails to show that a genuine issue exists, then summary judgment should be granted. *See id.*

## DISCUSSION

Defendant first moves for summary judgment on the ground that an affirmative defense bars Plaintiff's hostile work environment claim where Plaintiff suffered no tangible employment action as a result of the alleged harassment by Mr. Walloga. In her response, Plaintiff does not dispute that she suffered no tangible employment action, but instead argues that the elements for the affirmative defense depend on disputed facts. The affirmative defense to liability or damages for a claim of hostile work environment is comprised of two elements: (1) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to otherwise avoid harm. *See Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2270, 141 L.Ed.2d 633 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2293, 141 L.Ed.2d 662 (1998).

The first element requires a showing that the employer took reasonable steps to prevent *and* promptly correct the sexual harassment. *See Burlington*, 118 S.Ct. at 2270. Defendant mistakenly treats these two requirements as one and argues that proof that an employer implemented an antiharassment policy is usually enough to satisfy the first element in its entirety. This is not the law. *See Coates v. Sundor Brands, Inc.*, 164 F.3d 1361, 1369 (11th Cir.1999). A showing of a promulgated sexual harassment policy does satisfy the first prong requiring reasonable care in preventing the harassment. *See Faragher*, 118 S.Ct. at 2293. In this case, Defendant did promulgate a sexual harassment policy and reporting procedures, and brought this policy to Plaintiff's attention at the commencement of her employment. Therefore, Defendant did meet the first prong of the first element of the affirmative defense.

However, the second prong of the first element of the affirmative defense requires a showing that the employer took reasonable care to promptly correct the sexually harassing behavior. The factual support needed for this prong rests on when Plaintiff first reported the harassment to the Defendant. Defendant claims that Plaintiff did not report the incident until November 11, 1996, at which time Defendant argues it took immediate action in investigating the matter. Plaintiff insists that she first reported the harassment in February of 1996, shortly after her promotion to "outside" salesperson in the Florida Premise division. This factual dispute arises out of a discrepancy between Plaintiff's EEOC affidavit, in which she indicates notice was first given to Defendant on November 11, 1996, and her subsequent deposition in which she states notice was first given in February of 1996.

Defendant argues that, as a matter of law, Plaintiff's statements regarding notice should be judged by her EEOC affidavit and not by her subsequent deposition testimony. It is well-settled in this circuit that a party fails to create a genuine issue of material fact when that party takes a position in later litigation that is contrary to a position prior to the litigation without a "plausible" explanation. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir. 1987). Specifically, it is required that some inherent inconsistency exist between an affidavit and deposition before the latter testimony is disregarded. *See id. See also Van T. Junkins and Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir.1984). This rule is applied sparingly due to the harsh effect it may have on one's case. *See Rollins* at 1530.

Plaintiff asserts that she has an explanation for the discrepancy. Plaintiff claims there was a miscommunication between herself and the EEOC investigator. Specifically, Plaintiff claims that when she swore to the investigator that she "did not tell anyone about *these incidents* until November, 1996" that she was referring to *those* specific incidents previously discussed. She did not intend for the state-

ment to mean that she did not report *any* of the incidents that occurred until that date. Also, Plaintiff contends that she believed the EEOC investigator's inquiry to mean whether she reported to anyone *other than* Ms. Rawlins since Plaintiff had previously told the investigator about her complaints to Ms. Rawlins. Additionally, Plaintiff argues that the EEOC affidavit does mention that she complained about Mr. Walloga to Ms. Rawlins on "three or four occasions" prior to November, 1996.

Defendant's argument that Plaintiff's subsequent deposition testimony should be disregarded fails for two reasons. First, Plaintiff has a plausible explanation, and second, there is no inherent inconsistency between Plaintiff's affidavit and deposition since her affidavit does state that she complained to Ms. Rawlins on "three or four occasions" prior to November, 1996. Prior sworn statements and subsequent testimony are not inherently inconsistent if the latter merely clarifies certain ambiguities created by the prior statement. *See Junkins* at 657–58. *See also Hughes v. Amerada Hess Corp.,* 187 F.R.D. 682, 687 (M.D.Fla.1999). Plaintiff's subsequent deposition testimony detailing her complaints made to Ms. Rawlins prior to November 11, 1996 merely clarifies any ambiguities created in her prior EEOC affidavit.

Defendant also argues that Plaintiff's explanation for the inconsistency between her affidavit and subsequent deposition as to notice is not credible because Plaintiff did have an opportunity to correct any mistakes with regard to her statements in her EEOC affidavit, but failed to do so. The Court does not accept this argument. In most instances, one cannot be accused of failing to correct a mistake when one is not aware that any mistake has been made. Therefore, in reviewing the pleadings in light most favorable to Plaintiff, the Court finds that there is a genuine issue of material fact as to when Plaintiff gave Defendant notice of the alleged sexual harassment by Mr. Walloga.

The second element of the affirmative defense is proven if Plaintiff unreasonably failed to utilize preventative or corrective measures outlined in Defendant's policy to put Defendant on notice of the alleged harassment by Mr. Walloga. *See Faragher,* 118 S.Ct. at 2293. Defendant argues that Plaintiff failed to utilize corrective measures when she did not put Defendant on notice of the harassment until eight months after the first alleged incident. Defendant's argument is based upon its prior assertion that Plaintiff failed to give Defendant timely notice pursuant to Plaintiff's EEOC affidavit indicating notice was not given until eight months after the first alleged incident of harassment. The Court has already addressed this issue and found a genuine issue of material fact as to when Defendant actually received notice of the harassment.

■ However, notwithstanding the dispute as to when notice was given, it is important to note that Plaintiff did utilize the procedures required in Defendant's policy to put Defendant on notice. Plaintiff claims that she reported to Ms. Rawlins on several occasions prior to reporting to Ms. Strickland in November. Although Defendant's antiharassment policy requires that *all complaints* be reported to the Regional Human Resources Manager, which would be Ms. Strickland, Ms. Rawlins was the Human Resources Administrator, and stands in such a relation to Ms. Strickland that she had a *de facto* duty to act as a conduit to Ms. Strickland for complaints of harassment. *See Lamb v. Household Credit Services,* 956 F.Supp. 1511, 1517 (N.D.Cal.1997). Therefore, the fact that Plaintiff did not report the harassment directly to Ms. Strickland before November is not dispositive.

■ Defendant also contends that Plaintiff failed to make a *prima facie* case of retaliation under Title VII. A claim for retaliation requires a showing that: (1) the plaintiff participated in a statutorily protected activity; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.

*See Weaver v. Casa Gallardo,* 922 F.2d 1515, 1524 (11th Cir.1991). Defendant does not dispute that Plaintiff participated in a statutorily protected activity. Rather, Defendant argues Plaintiff failed to establish she suffered an adverse employment action.

Whether an employment action is adverse for purposes of establishing a *prima facie* case of retaliation depends on the substantiality of the action, which is determined on a case-by-case basis. *See Wideman v. Wal–Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir.1998). It is not required that the alleged adverse employment action constitute an ultimate employment decision. *See id.* Several employment actions considered collectively and in the totality of the circumstances may be deemed adverse and sufficient to prohibit discrimination. *See id.* Plaintiff argues that Defendant took several adverse employment actions against her subsequent to her conversation with Ms. Strickland in November and to the filing of her EEOC affidavit shortly thereafter. Defendant argues that each action taken was justified and not discriminatory.

Specifically, Plaintiff alleges that (1) Defendant "forced" her to take an indeterminate leave of absence during Defendant's investigation; (2) Defendant "forced" her to undergo a psychiatric evaluation and that the evaluation was "intrusive and abusive"; (3) Defendant commenced an investigation that included intrusive contacts with her past boyfriends and improper acquisition and dissemination of credit reports and medical records without her consent; (4) Defendant permitted Mr. Walloga and others to undermine and sabotage Plaintiff's work history and client relationships while Plaintiff was on leave and after her constructive discharge; and (5) Defendant constructively discharged Plaintiff. Under *Wideman,* Plaintiff correctly assumes that these actions constitute adverse employment actions.

However, Defendant argues that even if Plaintiff does make a *prima facie* case for retaliation, Plaintiff's claim still fails because there is no evidence that Defendant acted with discriminatory intent. Specifically, Defendant contends that (1) Ms. Strickland merely "suggested" that Plaintiff take a leave of absence because of her "emotional state"; (2) Ms. Strickland "suggested" that Plaintiff be evaluated by a psychiatrist to assess her ability to return to work; (3) there is no evidence to support Defendant commenced an investigation that included contacts with Plaintiff's former boyfriends; (4) the medical records Defendant acquired regarding the Plaintiff were already available in Plaintiff's employment file; (5) Defendant inadvertently acquired Plaintiff's credit report while obtaining a "comprehensive report" on the Plaintiff; (6) Mr. Walloga was instructed not to do anything that would undermined Plaintiff's job; and (7) there is no evidence to support that Plaintiff was constructively discharged as the new position provided the same title, salary, benefits, and commission structure as the previous position.

Where the Defendant has the burden to provide a nondiscriminatory explanation for the adverse actions, once that burden is satisfied, it shifts back to the Plaintiff to show credible evidence of a genuine issue of material fact as to whether the Defendant's explanation is pretextual. *See Matthews v. City of Gulfport,* 72 F.Supp.2d 1328, 1337 (M.D.Fla.1999). Defendant has met the burden of providing nondiscriminatory reasons for its action. Therefore, the burden returns to Plaintiff to show Defendant's reasons are pretextual.

As to the allegations that Defendant commenced an intrusive investigation that included contacts with Plaintiff's former boyfriends and improper acquisition and dissemination of Plaintiff's credit reports and medical records, Plaintiff does not offer evidence to show that the Defendant's explanation is pretextual. Additionally, in order to demonstrate constructive discharge, Plaintiff must show that her working conditions were so intolerable that a reasonable person in that position would

be compelled to resign. *See id.* at 1338. *See also Kilgore v. Thompson & Brock Mgmt.,* 93 F.3d 752, 754 (11th Cir.1996). Plaintiff did not make any attempt to work in the new position. Plaintiff argues the working conditions are intolerable because the new position does not require travel and Plaintiff would be required to "start all over again" with a new customer base. Mere dissatisfaction with a work assignment is not a basis for constructive discharge. *See Coffman v. Tracker Marine, L.P.,* 141 F.3d 1241, 1247 (8th Cir.1998). Therefore, Plaintiff does not show that Defendant's explanation for constructive discharge is pretextual.

However, Plaintiff has offered evidence that Defendant's explanation for Plaintiff's leave of absence and psychiatric evaluation, and Mr. Walloga's involvement in Plaintiff's accounts during her absence is pretextual. Plaintiff's retaliation claim will turn on the credibility of Ms. Strickland's testimony. Credibility determinations are a jury function. *See Matthews* at 1337. Therefore, the Court denies Defendant's motion for summary judgment as to Count II.

### CONCLUSION

This Court finds that there is a genuine issue of material fact as to the issue of when Defendant received notice of Plaintiff's complaints of sexual harassment, and whether Defendant's adverse employment actions toward Plaintiff constitute retaliation under Title VII. Accordingly, it is

**ORDERED** that the Defendant's Dispositive Motion for Summary Judgment (Dkt.29) be **denied.**