Jean **BERRY,** Plaintiff,

v.

**ESSILOR OF AMERICA, INC.,** Defendant.

No. 8:99–CV–955–T–17F.

United States District Court, M.D. Florida.

Nov. 8, 2000.

1343

Matthew K. Fenton, Wenzel & Fenton, Tampa, FL, Steven Greg Wenzel, Wenzel & Fenton, Tampa, FL, for plaintiff.

Richard C. McCrea, Jr., Charles M. Deal, Zinober & McCrea, P.A., Tampa, FL, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Motion for Summary Judgment (Dkts.15, 16, 21), and Plaintiff's Response and Memorandum in Opposition (Dkts.18, 19, 22).

## STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). However, the moving party bears the burden of initially proving that no issue of material fact exists. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex*, the Court held that Rule 56(e) requires the non-moving party to go beyond the pleadings in establishing whether there are specific facts showing a genuine issue to be resolved at trial. *See id.*

A genuine issue exists where the record, taken as a whole, contains evidence "such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court has the responsibility to examine the evidence in the record and determine whether genuine issues exist for trial. *See id.* Therefore, if the evidence is not probative and the non-moving party fails to show that a genuine issue exists, summary judgment should be granted. *See id.*

## INTRODUCTION

Plaintiff filed her Complaint and Demand for Jury Trial, (Dkt.1), under Title VII of the Civil Rights Act of 1964, without stating her claims with particularity. From the facts stated, Plaintiff was subjected to undesirable situations and sexual harassment in the presence of Defendant's management. Defendant moves for summary judgment on three grounds: (1) Plaintiff's claim of sexual harassment is time barred; (2) Defendant is not liable for any alleged sexual harassment; and, (3) Plaintiff has waived her right to pursue a retaliation claim.

## BACKGROUND

On August 18, 1985, Defendant employed Plaintiff as a Grade 1 packer. Plaintiff contends that from May, 1996 until September, 1996, Plaintiff's direct supervisor, Joe Woodward ("Woodward"), Defendant's employee, subjected Plaintiff to unlawful sexual harassment through actions described as sexual comments, unwelcomed touching, and masturbating in her presence. After experiencing what Plaintiff considered sexual harassment, Plaintiff reviewed her employee handbook, and, in September, 1996, reported her supervisor's conduct to his supervisor, Howard Johnson ("Johnson"). Johnson reported Plaintiff's complaint to Ed Cooksley ("Cooksley"), Director of Human Resources. Johnson informed Plaintiff that she would no longer report to Woodward, and Plaintiff was not subjected to any further sexual harassment.

Defendant investigated Plaintiff's allegations within a week of her complaint. To prevent contact between Woodward and Plaintiff, Defendant offered Plaintiff a position at a different facility. Plaintiff testified she was trained in twelve different jobs within a week, and was given a less desirable position than the one she originally held. Plaintiff claims Defendant retaliated against Plaintiff by providing Plaintiff with deficient job training. Plaintiff also claims fellow employees failed to accept Plaintiff, and chose to avoid and ignore her. Defendant contends that Plaintiff did not inform management of the unhappiness associated with Plaintiff's new position.

Within less than one month, Plaintiff took a medical leave of absence, beginning October 1, 1996. On Plaintiff's return to work, February 24, 1997, Plaintiff was returned to the same position she held prior to her report of sexual harassment. However, as a result of the Defendant's investigation, Woodward resigned from the company.

Following Plaintiff's return from medical leave, Plaintiff began to accumulate excessive absences. Defendant's management counseled Plaintiff, and informed her of the company policy that no more than a

five percent (5%) absentee rate would be tolerated or allowed. Plaintiff continued to miss work, and did not provide medical documentation for her absences. Plaintiff refused to release her medical records to Defendant. Due to her excessive absenteeism, which was in violation of Defendant's company policy, Plaintiff was terminated.

Plaintiff initially contacted the St. Petersburg Human Relations Department of EEOC on June 25, 1997. Plaintiff completed an initial interview questionnaire, and was informed that Plaintiff would need to return and sign her typed Charge of Discrimination before a notary. Seven weeks later, on August 19, 1997, Plaintiff returned and signed a typed and sworn Charge of Discrimination. On September 2, 1997, the EEOC issued a Notice of Plaintiff's Charge of Discrimination.

## DISCUSSION

### 1. Timeliness of Plaintiff's Claim

Defendant first moves for summary judgment on the basis that a condition precedent to bringing a civil action under Title VII is the timely filing of an administrative charge with the EEOC. The first issue that this Court must address is whether the initial interview questionnaire Plaintiff completed 291 days after the last incident of sexual harassment allegedly suffered by Plaintiff qualifies as filing an administrative charge with the EEOC.

"A charge shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9. Plaintiff contends the initial questionnaire completed on June 25, 1997, at the St. Petersburg Human Relations Department of EEOC, constitutes the initial filing of Plaintiff's complaint against Defendant. Defendant states that the questionnaire is not a formal charge because it was not "verified." 29 C.F.R. § 1601.12 states:

(a) Each charge should contain the following:

(1) The full name, address and telephone number of the person making the charge except as provided in § 1601.7;

(2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);

(3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See § 1601.15(b);

(4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

(b) Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, *including failure to verify the charge,* or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so amended shall not be required to be redeferred. (emphasis added)

Plaintiff completed an initial questionnaire that included the full name and telephone number of the person making the charge, as well as the full name and address of the company against whom the charge was made. The clear and concise statement of facts, as set out within Plaintiff's complaint, including pertinent dates, constituting the alleged unlawful employ-

ment practices, was outlined by checking the appropriate boxes and completing all sections of the questionnaire. Plaintiff signed a questionnaire that stated "I believe I have been discriminated against and harassed because of my sex by my employer." Plaintiff also stated that she had been harmed by being traumatized, assaulted, and harassed. Plaintiff also included the last date of this activity as September 7, 1996. Therefore, this Court finds that the questionnaire signed on June 25, 1997 satisfies the requirement that the Charge of Discrimination be in writing and signed.

The next issue before the Court involves verification of the Charge of Discrimination. Verification of the Charge of Discrimination is resolved by examining case law and by examination of the intended purpose behind verification. In *Weeks v. Southern Bell Tel. & Tel. Co.*, 408 F.2d 228, 230 (5th Cir.1969), the court states that: "It is in keeping with the purpose of the Act to keep the procedure initiating action simple ... All that is required is that it [the charge] give sufficient information to enable the EEOC to see what the grievance is all about." (quoting *Jenkins v. United Gas Corp.*, 400 F.2d 28, 30, n. 3 (5th Cir.1968)). If a Charge of Discrimination does not initially satisfy the verification requirement, verification may be completed through amendment of the Charge of Discrimination. "A charge may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein and such amendments relate back to the original filing date." *Id.* Therefore, the later typed, filed, and sworn statement submitted by the St. Petersburg Human Relations Department of EEOC submitted on August 19, 1997, constitutes an amendment to the original Charge of Discrimination and relates back to the original filing date, June 25, 1997.

The purpose of certain procedural requirements contained in Title VII is to protect employers from unfounded charges and harassment. Verification is such a procedural requirement. The EEOC asserts that, under its procedures, unsworn charges are not served upon respondents, and that the investigation against an employer does not commence until a sworn charge is served. *See id.* As such, the questionnaire filed by Plaintiff lacks the technical requirement of verification. However, since the purpose of verification is to protect the employer from frivolous accusations by employees, the purpose is not frustrated in the case at bar. Defendant was not prejudiced in any way, and the technical defect was cured through the sworn Charge of Discrimination filed on August 19, 1997. This formal sworn Charge of Discrimination was delivered to Defendant on September 2, 1997, when the EEOC formally began the investigation.

The Eleventh Circuit continues the Fifth Circuit reasoning and established liberal policy regarding the filing and amendment policies of EEOC Charges of Discrimination. In *Clark v. Coats & Clark, Inc.*, 865 F.2d 1237 (11th Cir.1989), the Eleventh Circuit reversed a district court, finding that the informal intake questionnaire satisfied the established filing requirement. The Court noted "[t]he EEOC's interpretation of statutes which it is charged with enforcing is entitled to great deference." *Id.*

Defendant attempts to distinguish *Clark* from the case at bar. However, after consideration, the Court finds the same analysis used in *Clark* is applicable. Defendant contends that there is no evidence that the initial interview questionnaire Plaintiff completed at the St. Petersburg Human Relations Department of EEOC was timely filed with the EEOC. The State of Florida is a deferral state, in which the filing of a Charge of Discrimination with a state agency constitutes dual filing with the appropriate federal agency. The front of the formal sworn EEOC Charge of Discrimination states, "You are hereby notified that a charge of employment discrimination under Title VII of the Civil Rights Act of 1964 has been received by the St. Pe-

tersburg Human Relations Department and sent to the EEOC for dual filing purposes, and the Florida Commission on Human Relations." This is sufficient to counter Defendant's argument of timeliness as to both federal and state agencies. Accordingly, this Court finds that Plaintiff's Charge of sexual harassment is not time barred, and denies Defendant's motion for summary judgment as to this issue.

2. *Defendant's Liability for Alleged Sexual Harassment*

 In a claim of hostile work environment harassment, the defendant must first establish that the employee did not suffer any adverse employment action before asserting the affirmative defense to liability or damages. The typical affirmative defense to a claim of hostile work environment harassment is comprised of two elements: (1) that the employer exercised reasonable care to prevent and promptly correct any sexually harassing behavior; and, (2) that the plaintiff employee unreasonably failed to take advantage of any employer-provided preventative or corrective opportunities or to otherwise avoid harm. *See Burlington Industries v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

 Plaintiff asserts that Defendant is responsible for the tangible employment action taken to which she was subjected. "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits." *See Ellerth,* 118 S.Ct. at 2268. In support of Plaintiff's claim, Plaintiff states that Woodward took tangible employment action against Plaintiff by offering Plaintiff paid time off if Plaintiff would engage in sexual propositions. Plaintiff contends that she was offered tangible economic benefit to engage in Woodward's sexual demands.

In the Supplement to Defendant's Motion for Summary Judgment (Dkt.21), Defendant contends that Woodward did not have the authority to grant paid days off to Plaintiff. In *Ellerth,* the Supreme Court reasoned that "As a general rule, apparent authority is relevant where the agent purports to exercise a power which he or she does not have, as distinct from where the agent threatens to misuse actual power." *Id.* 118 S.Ct. at 2267–68. In its discussion of vicarious liability for a supervisor's harassment, the Eleventh Circuit Court of Appeals recognizes that *quid pro quo* sexual harassment is aided by the apparent or inherent authority of a supervisor. *See Henson v. Dundee,* 682 F.2d 897, 909 (11th Cir.1982).

After analyzing both Plaintiff's and Defendant's allegations and supporting evidence, the Court finds that regardless of whether Woodward had the authority to grant the additional paid days off to Plaintiff, there is a genuine issue of material fact as to whether the offering of the additional paid days off constitutes a loss of a tangible employment benefit. As this is an issue that cannot be resolved on summary judgment, the Court finds that Defendant's Motion for Summary Judgment must be denied.

Assuming, arguendo, however, that Plaintiff did not suffer the loss of tangible employment benefits or adverse employment action, Defendant must meet both prongs of the affirmative defense to liability or damage for the claim of hostile work environment. The first element requires a showing that the employer took reasonable steps to prevent and promptly correct the sexual harassment. *See Burlington,* 524 U.S. at 747, 118 S.Ct. 2257. It is undisputed that Defendant took immediate action when Plaintiff notified management of the situation she was enduring. Plaintiff was immediately moved to another area and placed in a different position, followed by an internal investigation.

However, the second prong of the affirmative defense requires Plaintiff to utilize

preventative or corrective measures outlined in Defendant's sexual harassment policy. There is a dispute as to whether Defendant had a sexual harassment policy in effect at the time of Plaintiff's employment, and whether Defendant had advised Plaintiff of this policy. Defendant contends Plaintiff should be charged with constructive knowledge of the policy because she knew of another Essilor employee who had reported being harassed to management without being punished, and Plaintiff failed to actively pursue gaining information regarding Essilor's anti-harassment policy.

An important and necessary step that must be taken, as noted in *Faragher,* is the dissemination of the employer's anti-harassment policy. Defendant's Director of Human Resources, Cooksley, testified in his deposition (Dkt.19) that he drafted Essilor's sexual harassment policy in approximately May, 1990. Defendant contends that this policy was then posted on every major bulletin board throughout the company and was specifically distributed to each employee as an addendum to their employee handbook. However, Plaintiff claims in a signed affidavit, (Dkt.24), that she never received an insert to her employee handbook and never saw Essilor's sexual harassment policy posted. Plaintiff also denies receiving sexual harassment training, contrary to Cooksley's testimony. As there is a dispute among the above facts, and, as this Court must consider the facts in the light most favorable to the non-moving party, the Court concludes that factual disputes remain as to whether Defendant had a sexual harassment policy in effect that was made available for Plaintiff to utilize to prevent the harassment alleged.

### 3. Retaliation

#### a. Waiver

Defendant contends that Plaintiff did not assert a retaliation claim in her Complaint and has, therefore, waived her right to pursue a claim of retaliation. Plaintiff argues to the contrary, and relies on previous rulings of this Court that enforce the liberal pleading guidelines established by the Federal Rules of Civil Procedure.

The Eleventh Circuit has liberally construed Rule 8(a)(2) of the Federal Rules of Civil Procedure to mean, "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *SEC v. Physicians Guardian Unit Investment Trust,* 72 F.Supp.2d 1342, 1343–44 (M.D.Fla.1999) (quoting *Evans v. McClain of Georgia, Inc.,* 131 F.3d ·957, 964 n. 2 (11th Cir.1997)).

Applying the Eleventh Circuit's reasoning, Plaintiff's Complaint, (Dkt.1), however unspecific, does plead facts that give rise to a cause of action for retaliation under Title VII of the Civil Rights Act of 1964, as amended.

#### b. Unlawful Retaliation

■ Defendant also contends that Plaintiff fails to make a *prima facie* case of retaliation under Title VII. A claim for retaliation requires a showing that: (1) the plaintiff participated in a statutorily protected activity; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *See Rousselle v. GTE Directories Corp.,* 85 F.Supp.2d 1286, 1291 (M.D.Fla.2000).

■ In the case at bar, Defendant does not dispute that Plaintiff participated in a statutorily protected activity. Therefore, the first element for Plaintiff to establish a *prima facie* case of retaliation is satisfied. However, Defendant asserts that Plaintiff cannot establish that she suffered an adverse employment action. Whether an employment action is adverse for purposes of establishing a *prima facie* case of retaliation depends on the substantiality of the action, which is determined on a case-by-case basis. *See id.* The basis of Plaintiff's retaliation claim is that Plaintiff was trans-

ferred to another job assignment, received improper training and endured ostracism by other employees.

■ It is not required that the alleged adverse employment actions constitute an ultimate employment decision. *See Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998). Several employment actions considered collectively and in the totality of circumstances may be deemed adverse and sufficient to prohibit discrimination. *See id.*

■ Plaintiff asserts that although her transfer was a lateral transfer, Plaintiff was placed in a less desirable job than the one she originally held by Defendant. However, this Court notes that Plaintiff held the position for a period of less than a month before being placed on medical leave. Once Plaintiff returned from leave, Plaintiff was re-assigned to the original position occupied by Plaintiff before the formal complaint of harassment was filed with the St. Petersburg Human Relations Department of EEOC on June 25, 1997. In addition, Plaintiff contends that Plaintiff was not completely excluded from contact with the accused manager. Plaintiff states that she was required to receive her paycheck from the accused manager in the days following the initial complaint with Essilor on September 8, 1996, and had to later transfer to another facility to avoid coming into contact with this accused harasser.

The final element in establishing a prime facie case of discrimination is the causal connection between the protected activity and the establishing of adverse employment consequences. Defendant contends that Plaintiff cannot produce sufficient evidence to demonstrate a causal connection between any protected activity on her part and the alleged adverse actions Defendant took against her. The conflicting issues of material fact concerning the actions Defendant took against Plaintiff after the sexual harassment was brought to the attention of management prohibit the Court from entering summary judgment in Defendant's favor.

## CONCLUSION

Defendant has established undisputed legitimate reasons for the employment actions allegedly taken. Where there are disputes as to material facts, the Court is required to evaluate the facts in the light most favorable to Plaintiff. This Court believes the resolution of the disputed issues regarding the liability and retaliation claims in this case will turn, in part, on the credibility of testimony. "Credibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). With this consideration in mind, and in viewing the facts presented in the light most favorable to the nonmoving party, the Court finds the Defendant's Motion for Summary Judgment must be denied. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Dkt.15) is **denied.**